[No. 42338. En Banc. May 31, 1973.]

THE STATE OF WASHINGTON, *on the Relation of Standard Mining & Development Corporation, Respondent,* v. THE CITY OF AUBURN *et al., Appellants.*

*John B. Bereiter, Bonjorni, Burgeson & Fiori, Duncan A. Bonjorni,* and *Stephen M. Sward,* for appellants.

*Derrill T. Bastian,* for respondent.

ROSELLINI, J.—The respondent petitioned the superior court for a writ of certiorari to review the action of the Auburn Planning Commission and City Council in imposing conditions upon a permit which was issued to the respondent to conduct a gravel mining operation upon land within the city limits. It was alleged that the city acted arbitrarily and capriciously in imposing conditions which were excessive and unreasonable.

It was shown at the trial that in 1966 the City of Auburn had annexed the property upon which the gravel extracting activity was to be conducted. The land had been zoned by the county as residential property. It is undisputed that when the land was annexed it lost its county zoning classification.

The City of Auburn had adopted, in 1965, a general zoning ordinance providing for comprehensive land use and division of the city into districts.

Shortly after annexation, the respondent applied for and obtained a permit from the city to conduct a gravel mining operation on the land, subject to certain conditions. This permit expired in 1971. In the meantime the City of Auburn had adopted a uniform building code and a comprehensive plan for the city's development. The respondent's application for renewal of its permit was granted, subject

to certain conditions to which the respondent objected and as a consequence brought this action.

During the course of the trial, the court noted a situation which had previously escaped the attention of counsel for both parties. Upon the zoning map, the land used in this gravel operation was not given a classification. Apparently both parties to this action had always assumed that the land was zoned residential. While it is located in a sparsely developed residential area, there are no dwellings immediately adjacent to it. There is no question that it is within the city limits and is included on the zoning map as an unclassified district.

The trial court concluded that, because the land was not given a zoning classification by the city, it was not subject to the provisions of the zoning ordinance governing the issuance of permits for gravel mining operations. It also held that the permit requirement was invalid because the ordinance itself did not specify standards to guide the Planning Commission and the City Council in determining what conditions to impose. The court did not take evidence or pass upon the respondent's allegations that the conditions imposed were excessive and unreasonable.

On this appeal, the city challenges the court's two conclusions upon which it based its judgment. In regard to the first of them, it advances several contentions, only one of which need be considered. This is the theory that the ordinance in question, viewed in the light of its purpose and the statutory authority under which it was enacted and in conjunction with the comprehensive plan, shows that it was the intent of the council, in enacting the zoning ordinance, to make the requirement of special permits for special uses applicable to all land within the city limits, regardless of whether it was classified or unclassified.

We look first to the statutory authority. RCW 35.63[1] provides a method of establishing a planning commission in a city or county, and for the adoption by ordinance or resolu-

---

[1]See also RCW 35A.63. The appellant in this case elected to proceed under RCW 35.63.

tion of a comprehensive plan for land use within the boundaries of the municipality. RCW 35.63.080 authorizes the legislative authority of the municipality to impose restrictions upon the use of land

> in such measure as is deemed reasonably necessary or requisite in the interest of health, safety, morals and the general welfare, upon recommendation by its [planning] commission . . .

RCW 35.63.090 provides that:

> [a]ll regulations shall be worked out as parts of a comprehensive plan which each commission shall prepare for the physical and other generally advantageous development of the municipality and shall be designed, among other things, to encourage the most appropriate use of land throughout the municipality; to lessen traffic congestion and accidents; to secure safety from fire; to provide adequate light and air; to prevent overcrowding of land; to avoid undue concentration of population; to promote a coordinated development of the unbuilt areas; to encourage the formation of neighborhood or community units; to secure an appropriate allotment of land area in new developments for all the requirements of community life; to conserve and restore natural beauty and other natural resources; to facilitate the adequate provision of transportation, water, sewerage and other public uses and requirements.

Provision is made in RCW 35.63.100 for the holding of public hearings before the recommendation of an initial plan to the municipality. It provides for the filing of a copy of the ordinance or resolution adopting or embodying such plan or any part thereof or any amendment thereto, as well as any map or plat referred to or adopted by the ordinance or resolution.

RCW 35.63.110 authorizes the council or board, on recommendation of its commission, to divide the municipality or any portion thereof into districts or to establish such official maps, or development plans for the whole or any portion of the municipality as may be deemed best suited to carry out the purposes of the chapter, and to impose restrictions and regulations within such districts.

RCW 35.63.120 provides for a procedure for amending any ordinance or resolution adopting any such plan or regulations.

Pursuant to the authority conferred by this chapter, the City of Auburn appointed the Planning Commission and adopted a comprehensive plan, as well as a zoning ordinance. A zoning map was filed. This map showed all of the territory within the city divided into districts, but the property of the respondent was not classified. The zoning ordinance provided for the establishment of 15 classifications of districts, such as 1-family residential, light commercial, and heavy industrial. In each of these districts, the use of the land was restricted to that use which was designated in the classification.

The respondent's land, being unclassified, presumably could be put to any use which was permitted in the classified districts. However, in none of the classified districts was a gravel pit authorized without the securing of a special use permit. Section 28 of the zoning ordinance provided:

The following uses may be permitted in the particular district listed below by a special permit issued by the City Council:
Any District. Gravel yards and pits may be permitted by a special permit issued by the City Council after recommendation and public hearing by the Planning Commission.

It is the respondent's theory, adopted by the trial court, that because the ordinance did not list unclassified districts, this provision did not apply to such districts, even though the legislative body used the rather all-inclusive words "any district." Assuming for the moment that this theory is valid and comports with the expressed intent of the ordinance, it does not necessarily follow, as the respondent and the trial court have reasoned, that because the provision does not apply to unclassified districts the respondent is free to conduct a gravel extracting operation without the necessity of obtaining a permit. This provision is the only

one in the ordinance which authorizes the use of land for gravel pit purposes,[2] and if the respondent's theory is valid, it authorizes such use only in classified districts. It would follow that the respondent's land, being unclassified, is not eligible for such a permit at all.

■ We do not agree, however, with the interpretation successfully put forth by the respondent in the trial court. It is the general rule, recognized and adopted by this court, that zoning ordinances should be liberally construed to accomplish their plain purpose and intent. At the same time the court bears in mind that they are in derogation of the common-law right to use property so as to realize its highest utility and should not be extended by implication to cases not clearly within the scope of the purpose and intent manifest in their language. *Hauser v. Arness,* 44 Wn.2d 358, 267 P.2d 691 (1954).

■ Reading the comprehensive plan and the zoning regulations adopted in implementation of it, we find it manifest that the City of Auburn intended to regulate and control the use of all land within the city limits. It also is

---

[2]On page 31 of the ordinance (Ordinance No. 1702), there appears the following provision:

3. Conditional Uses. In considering applications for Conditional Uses, the Board shall consider the nature and condition of all Adjacent Uses and Structures, and no such Conditional Use shall be authorized by the Board unless the Board finds that the authorizing of such conditional use will not be materially detrimental to the public welfare or injurious to property in the Zone or vicinity in which the property is located and that the authorization of such Conditional Use will be consistent with the spirit and purpose of this title. In authorizing a Conditional Use, the Board may impose such requirements and conditions with respect to location, installation, construction, maintenance, and operation and extent of Open Spaces in addition to those expressly set forth in this title as may be deemed necessary for the protection of other properties in the zone or vicinity and the public interest.

Neither party to this action has claimed that this provision is applicable to gravel pits under the Auburn ordinance. Arguably, it might be the source of authority for such operations if the ordinance did not contain a special provision giving the Planning Commission the duty of examining applications for this particular special use, conducting hearings and making recommendations thereon.

clear that it intended to allow the excavation of gravel only under the conditions which should be imposed by the City Council in issuing a permit. Certainly there is no expressed intent that such activities might be carried on anywhere within the city limits without such a permit. We are led to conclude that when the drafters of this ordinance used the words "any district," they meant any district within the city limits, whether classified or unclassified. Consequently, the respondent was subject to the requirement that it apply for and obtain a permit before conducting a gravel extracting operation upon its land.

It contends further, however, and the trial court upheld this contention, that the requirement of a permit is invalid because the ordinance itself contains no standards to guide the City Council in formulating the conditions which shall attach to a permit.

■ We have recently recognized the principle that the legislative body of a municipality acts in an administrative capacity when it issues a special use permit and must be guided by adequate standards. *Durocher v. King County*, 80 Wn.2d 139, 492 P.2d 547 (1972). As the general rule is stated in 3 R. Anderson, *American Law of Zoning* § 14.10 (1968), the authority to issue special permits must be controlled by adequate standards, whether it is vested in legislative or administrative bodies.[3] These authorities are concerned with the exercise of administrative discretion in deciding whether to grant or deny a permit.

---

[3]*See Zylka v. Crystal*, 283 Minn. 192, 167 N.W.2d 45 (1969), holding that if an ordinance governing the issuance of special use permits does not specify standards to guide the administrative body in issuing or denying such a permit, that body must make findings of fact showing the basis upon which it denies a permit; and that if it fails to do so, the usual presumption of reasonableness does not attach to its decision, and the burden is upon the administrative body to show that the denial was not arbitrary or capricious. Arguments in favor of imposing these requirements, the court said in a footnote on page 198, either by statute or by judicial decision include:

(1) To protect the applicant and the public from arbitrary action; (2) to prevent discrimination; and (3) to facilitate and confine the scope of judicial review. See, 2 Rathkopf, Zoning and Planning (3 ed.) p. 54-52; Note, 49 Minn. L. Rev. 973, 1000.

Since the respondent was not denied a permit, its complaint of lack of standards relates only to the imposing of conditions on the use.

We are cited to no authority holding that a zoning ordinance must specify standards for imposing the conditions under which a special use permit will be issued. Professor Anderson says, in 3 R. Anderson, *American Law of Zoning* § 15.29 *(1968)*:

> As in the case of the power of a board of adjustment to grant conditional variances, it is sometimes said that a board with authority to grant a special permit has inherent power to attach conditions designed to carry out the purposes for which the permit requirement was imposed. One court, upholding a board decision which conditioned a special permit, said:
>
> > "It is clear that a Zoning Board of Appeals has the inherent power, in connection with the granting of a special permit, to impose such reasonable conditions and restrictions as are directly related to and incidental to the proposed use of the property and which are not inconsistent with the provisions of the local ordinance."
>
> Under most zoning regulations, it is unnecessary to rely upon inherent power to impose conditions, or to infer such power from general language in the ordinance. The authority to grant special permits commonly includes express language empowering the board of adjustment to grant permits subject to reasonable conditions designed to protect adjacent property and to carry out the purposes of the ordinance.

(Footnotes omitted.)

The author says, in section 15.30:

> Assuming authority to attach conditions to a special permit, a condition is properly imposed where it does not offend any provision of the ordinance, and where it is reasonably calculated to protect adjacent land and to achieve some legitimate objective of the zoning ordinance.

In section 15.31, the rule is stated that a board of adjustment may not impose a condition which is unrelated to the use of the land; or one which is inconsistent with the zon-

ing regulations of the municipality, or one which would require illegal conduct on the part of the permit holder. It also is said that a condition may not be exacted which is not in the public interest.

Thus it appears that the courts have developed certain rules relating to the imposition of conditions, but none, insofar as we have been able to determine, has said that the ordinance authorizing the issuance of permits must specify standards for the imposition of conditions.

In the case before us, the appellant city declares that it was guided by the considerations which are set forth in the comprehensive plan adopted by the city when it imposed conditions on the permit which it issued to the respondent, and that it also took into consideration requirements which are contained in its uniform building code.

The comprehensive plan, which was adopted by the city, contains detailed statements of policy concerning the placing of conditions upon the issuance of such permits. RCW 35.63.090 also sets forth a list of purposes which zoning regulations shall be designed to achieve. The zoning ordinance contains, in its article 1, section 2, an express adoption of these purposes. The terms of the permit which was issued to the respondent show that these guidelines were followed generally by the Planning Commission and City Council in imposing conditions. It may be that some of the conditions imposed were unnecessarily burdensome, as the respondent contends. The trial court did not reach that question.

The trial court expressed doubt that the city building code was relevant. We do not pass on this question, since at the present stage of the proceeding the conditions are not before us for review; and if the appellant believes that a particular condition is required or justified under the building code, it should have an opportunity to present that theory on remand.

The respondent argues that the city is not required to follow its comprehensive plan and consequently it cannot be read in pari materia with the zoning ordinance to find

standards. If we were convinced that specific standards spelled out in the zoning law were necessary, this argument might well have substantial merit. But we have not been shown that courts have imposed such a stringent rule, nor have we been shown that it would serve any substantial purpose. If the purpose of the requirement of the special permit is known, the court can examine the conditions imposed and after having heard the evidence, can determine whether it is reasonably calculated to effect that purpose and whether it is unnecessarily onerous. We know of no rule which would forbid the court to examine the comprehensive plan, as well as the applicable statutes, to ascertain the purpose of the legislative body in providing that certain land may not be used in certain ways unless a special permit is secured.

The respondent cites Buell v. Bremerton, 80 Wn.2d 518, 495 P.2d 1358 (1972), suggesting that it forbids consideration of the comprehensive plan. We said there that a comprehensive plan is not a regulatory measure, but is a "blueprint which suggests various regulatory measures." This is in accord with RCW 35.63.080, which contemplates that regulatory measures shall be adopted, as well as a comprehensive plan. It is, however, the plain import of the statute, taken as a whole, that a city which adopts such a plan should be guided by it in its zoning regulations until it is amended in the manner prescribed by statute or repealed. This was implicitly recognized in the Buell case, if not explicitly so. The case is not authority for the proposition that such a plan may not be consulted in making administrative decisions.

As we recently indicated in Barry & Barry, Inc. v. Department of Motor Vehicles, 81 Wn.2d 155, 500 P.2d 540 (1972), the specification of standards is not always appropriate in administrative actions. The function of prescribing the conditions under which a special use permit may be enjoyed is one to which this principle is applicable. Only rarely will the environmental factors affecting different special use applications be the same. Generally speaking,

the conditions imposed must necessarily differ from case to case. This does not mean that the applicant is denied due process of law or the equal protection of the laws—so long as he is granted a hearing, a right of appeal, and a chance to show that the conditions are unreasonable, that is, unnecessarily burdensome or unrelated to the purpose which they are legitimately designed to serve.

The guidelines set forth in the comprehensive plan reveal a purpose, in harmony with the general purpose of the plan and of zoning laws, to provide for the protection of neighboring property and other areas affected by the operation and to assure that the land will be left in such condition that it can be used appropriately after the excavation is finished and will not become an "eyesore."[4] The considerations set forth in the policy statement are proper and appropriate, as we view the law, and the appellant has made

[4]"*The Sand and Gravel Industry.* The Auburn Planning Area has relatively extensive deposits of sand and gravel which are extracted and used as aggregate in concrete and asphalt. Good aggregate deposits which are reasonably accessible to metropolitan market areas are relatively scarce. As the major ingredient of concrete, these deposits are extremely useful and necessary and thus a valuable natural resource. This resource needs to be exploited in freeways, roads and public works if dams and water projects and private construction are to continue their growth.

"Sand and gravel quarries should be allowed to continue operation in the Auburn Planning Area as long as it is economically feasible under regulations to protect the public health, safety and welfare. As a policy, it is recommended that quarries be permitted only where it is advisable to modify slope to create usable land and where the community will suffer no short or long-term adverse effects. Care must be exercised to insure that creating usable land will be the real end result of the quarry operation and that it is not simply put forth as an excuse for a quarry permit. A final grading plan should be submitted with every application, conditions of operation should be spelled out in detail and performance bonds required. These should be periodically reviewed to insure that the operator is indeed progressing in the manner specified. Aesthetic qualities, erosion control, the effect on the community and the creation of usable land should be the primary considerations in a decision to grant new quarry permits or extend the scope of the five quarries presently operating. Amortization of equipment and market for the material should take second place as criteria." *Comprehensive Plan for Auburn Planning Area* (Sept. 1968), at 75.

no showing to the contrary. If the conditions imposed were reasonably calculated to achieve the purposes set forth in the comprehensive plan and were not unnecessarily burdensome, the court should not set them aside.

The burden is upon the respondent to establish its allegations concerning the allegedly arbitrary and capricious acts of the appellant in imposing conditions. *See Chestnut Hill Co. v. Snohomish,* 76 Wn.2d 741, 458 P.2d 891 (1969). Since this issue was not reached in the trial of the action, it must be remanded for further proceedings consistent with the views expressed herein. If the trial court finds that the respondent has established that any of the conditions imposed are unnecessarily onerous or not reasonably calculated to achieve the purposes set forth in the comprehensive plan, it should order the condition modified or removed.

The judgment is reversed and the cause remanded.

HALE, C.J., FINLEY, HUNTER, HAMILTON, STAFFORD, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.