103 P.3d 802 (2004)
J.L. STOREDAHL & SONS, INC., a Washington corporation, Appellant,
v.
COWLITZ COUNTY, a municipal corporation, Respondent, and
Kenneth M. Conaway and Karen Conaway, husband and wife; Jerry L. Storedahl and Jeannie C. Storedahl, husband and wife, Additional Parties.
No. 30245-4-II.
Court of Appeals of Washington, Division 2.
August 10, 2004.
As Amended on Denial of Reconsideration and Publication Ordered December 21, 2004.
*803 John S. Karpinski, Attorney at Law, Vancouver, WA, Ronald S. Marshall, Attorney at Law, Kelso, WA, for Respondents.
Eric S. Merrifield, Perkins, Coie LLP, Seattle, WA, Alexander Weal Mackie, Perkins, Coie LLP, Olympia, WA, for Appellants.
HOUGHTON, J.
J.L. Storedahl & Sons, Inc. appeals from a superior court judgment affirming a Cowlitz County Board of County Commissioners (Board) land use decision. That decision required Storedahl to comply with conditions attached to the approval of a special use permit to operate a surface mine. Storedahl raises jurisdictional and evidentiary issues. We affirm.

FACTS
In February 2001, Storedahl applied for a special use permit to expand its 90.2 acre surface mine in Cowlitz County, known as Carrolls Mine. The proposed project would add approximately 16.2 acres to the quarry.
On July 20, after an open hearing, the Cowlitz County Planning Commission (Commission) approved the special use permit, subject to 13 conditions. These conditions sought to mitigate a wide range of impacts from the proposed mine expansion, including those related to noise, traffic and traffic safety, control of unauthorized public access, air emissions and air quality, vibrations, blasting and blasting safety, water quality and quantity pertaining to neighboring wells, hazardous materials handling, and the process for addressing any potential future violations of these conditions.
The owners of adjacent parcels, Kenneth and Karen Conaway, appealed the Commission's approval to the Board. After a closed hearing, the Board remanded Storedahl's permit request to the Commission for further clarification and information gathering.
The Commission held a second open hearing on May 1, 2002, and approved Storedahl's special use permit. This approval included 19 conditions, clarifications, and changes to its earlier designated conditions.
The Board then reviewed the Commission's new plan at closed hearings on July 23 and 30, 2002. On August 13, 2002, the Board approved Storedahl's special use permit, but modified six findings and attached a total of 19 conditions.
Storedahl appealed the Board's modified findings and conditions to the superior court. On March 24, 2003, the superior court upheld the Board's additional conditions and findings. Storedahl now appeals, asserting that five of the Board's additional conditions the superior court upheld are unlawful.

ANALYSIS

Standard of Review
The Land Use Petition Act (LUPA) governs judicial review of land use decisions. HJS Dev., Inc. v. Pierce County, Dep't of Planning & Land Servs., 148 Wash.2d 451, 467, 61 P.3d 1141 (2003) (citing Chelan County v. Nykreim, 146 Wash.2d 904, 916-17, 52 P.3d 1 (2002)). "A petition for review by the superior court constitutes appellate review on the administrative record before the local jurisdiction's body or officer with the highest level of authority to make the final determination." HJS, 148 Wash.2d at 467, 61 P.3d 1141; see also Citizens to Preserve Pioneer Park v. City of Mercer Island, 106 Wash. *804 App. 461, 470, 24 P.3d 1079 (2001); RCW 36.70C.130(1); RCW 36.70C.020(1).
On review of a superior court land use permit decision, we stand in the same shoes as that court. HJS, 148 Wash.2d at 468, 61 P.3d 1141 (citing Citizens, 24 P.3d 1079, 106 Wash.App. at 470). We review the administrative decision on the record of the administrative tribunal, not the superior court record. HJS, 148 Wash.2d at 468, 61 P.3d 1141 (citing King County v. Boundary Review Bd., 122 Wash.2d 648, 672, 860 P.2d 1024 (1993)). We therefore review the record before the Board and review questions of law de novo to determine whether the facts and law supported the land use decision. HJS, 148 Wash.2d at 468, 61 P.3d 1141; see also City of Univ. Place v. McGuire, 144 Wash.2d 640, 647, 30 P.3d 453 (2001); Girton v. City of Seattle, 97 Wash.App. 360, 363, 983 P.2d 1135 (1999), review denied, 140 Wash.2d 1007, 999 P.2d 1259 (2000).
Based on this standard, to obtain relief from the land use decision, Storedahl must establish the following:
(a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;
(b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;
(c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;
(d) The land use decision is a clearly erroneous application of the law to the facts;
(e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or
(f) The land use decision violates the constitutional rights of the party seeking relief.
RCW 36.70C.130(1).

Board Jurisdiction
Storedahl first contends that the Board improperly exercised original jurisdiction, arguing that the Cowlitz County Code (CCC)[1] limits the Board to appellate jurisdiction.
In order to give proper deference on factual issues, it is necessary to determine whether each tribunal below had original or appellate jurisdiction. State ex rel. Lige & Wm. B. Dickson Co. v. County of Pierce, 65 Wash.App. 614, 618, 829 P.2d 217, review denied, 120 Wash.2d 1008, 841 P.2d 47 (1992). A tribunal with original jurisdiction has authority to make findings of fact, and it is to those findings that we defer in the manner described above. Wm. B. Dickson Co., 65 Wash.App. at 618, 829 P.2d 217.
A tribunal with only appellate jurisdiction is not permitted or required to make its own findings and such findings, if entered, are surplusage. Wm. B. Dickson Co., 65 Wash.App. at 618, 829 P.2d 217. (citing Maranatha Mining, Inc. v. Pierce County, 59 Wash.App. 795, 802, 801 P.2d 985 (1990); Berger Engg. Co. v. Hopkins, 54 Wash.2d 300, 308, 340 P.2d 777 (1959); Grader v. City of Lynnwood, 45 Wash.App. 876, 879, 728 P.2d 1057 (1986)). The Board may only retain either original or appellate jurisdiction; not a combination of both. Maranatha Mining, 59 Wash.App. at 800-01, 801 P.2d 985. But "[t]he scope and nature of an administrative appeal or review must be determined by the provisions of the statutes and ordinances which authorize them." Citizens, 106 Wash.App. at 471-72, 24 P.3d 1079 .
We must begin our analysis by examining Cowlitz County's procedure for handling special use permit applications. Former CCC § 18.10.310, the provision applicable here, *805 stated that "[t]he action of the Planning Commission may be appealed to the Board of County Commissioners...." Also, former CCC § 18.10.320 addressed the Board's role in resolving an appeal: "Upon any appeal of the Planning Commission's decision on a special use application, the Board shall review the application on the record, as provided in CCC 18.10.310. The Board shall have full authority to grant the permit, or grant the permit subject to conditions, or deny the permit." (Emphasis added.) Finally, former CCC § 18.10.325 provided: "The Planning Commission and if appealed, the Board of County Commissioners shall make available to the public those findings of fact upon which their action is based regarding approval or denial of special use permit applications."
The Board's August 13, 2002 decision letter informed Storedahl that the Board made its own factual findings;[2] thus, the Board exercised original jurisdiction. But by granting the Board full authority to issue or deny permits, former CCC § 18.10.320 also authorized the Board to exercise its original jurisdiction when reviewing the Commission's decision. Therefore, here, the Board properly exercised its original jurisdiction.

Special Use Permit Conditions

Standards for Imposing Additional Conditions
Storedahl next appeals from 5[3] of the 19 conditions the Board placed on its permit request. Storedahl asserts that the Board failed to provide identifiable standards for imposing these conditions. Specifically, Storedahl asserts that the County did not follow the standards adopted by County Ordinance 95-166 and Resolution 95-167; instead, the County arbitrarily imposed a set of conditions.[4]
A municipality, as a legislative body, acts in an administrative capacity when it issues a special use permit and must be guided by adequate standards. Standard Mining & Dev. Corp. v. City of Auburn, 82 Wash.2d 321, 327, 510 P.2d 647 (1973) (citing Durocher v. King County, 80 Wash.2d 139, 492 P.2d 547 (1972)). The authority to grant special permits commonly includes express language empowering the administrative body to grant permits subject to reasonable conditions designed to protect adjacent property and to carry out the purposes of the ordinance. Standard Mining, 82 Wash.2d at 328, 510 P.2d 647.
To prevail, Storedahl must establish that the Board acted arbitrarily and capriciously in imposing conditions. Standard Mining, 82 Wash.2d at 332, 510 P.2d 647; see also Chestnut Hill Co. v. City of Snohomish, 76 Wash.2d 741, 458 P.2d 891 (1969). If the conditions imposed were reasonably calculated to achieve the purposes set forth in the County resolution, they cannot be set aside on appeal. Standard Mining, 82 Wash.2d at 332, 510 P.2d 647.
Standards specifications are not always appropriate in administrative actions. Standard Mining, 82 Wash.2d at 330, 510 P.2d 647 (citing Barry & Barry, Inc. v. Dep't of Motor Vehicles, 81 Wash.2d 155, 500 P.2d 540 (1972)). Only rarely will the environmental factors affecting different special use applications be the same, thus, the conditions imposed must necessarily differ from case to case. Standard Mining, 82 Wash.2d at 330-31, 510 P.2d 647. This does not mean that the applicant is denied due process of law or the equal protection of the laws-so long as the applicant is granted a hearing, a right of *806 appeal, and an opportunity to show that the conditions are unreasonable (unnecessarily burdensome or unrelated to the purpose that they are legitimately designed to serve). Standard Mining, 82 Wash.2d at 331, 510 P.2d 647.
Here, according to County Ordinance 95-166, a surface mine is a permitted use solely under a special use permit, subject to administrative guidelines and standards adopted by Board resolution. According to County Resolution 95-167, the purpose of adopting the standards for surface mines is to protect residential and other land uses near existing and potential surface mines; to provide standards of operation for surface mining; and to provide for local public review of surface mine permits.
Finally, former CCC § 18.10.295 stated:
If the Planning Commission finds that the proposed action is consistent with the Comprehensive Plan and conforms to this regulation, the Planning Commission shall approve the application subject to such conditions as may be necessary to assure that development will comply with the Comprehensive Plan and will be compatible with other uses in the district and this chapter.
The considerations set forth in the County Ordinance and Resolution are proper and appropriate. The Board was not required to identify any standards it used to impose additional conditions on Storedahl's special permit. These conditions did not offend the purpose of the County Ordinance and Resolution, did not offend the Comprehensive Plan, and furthered a legitimate purpose of the County's regulations. Storedahl's argument fails.

Substantial Evidence
Storedahl also argues that the record does not contain substantial evidence supporting the Board's decision to impose additional permit conditions. Specifically, Storedahl contests five conditions: (1) requiring blasting mats during all blasting; (2) limiting blasting to beyond 300 feet of any residence or well; (3) expanding the buffer from 60 to 90 feet; (4) extending fencing to the southeast corner of tract 1; and (5) limiting rock extraction to beyond 200 feet of an existing well.
Like the superior court, we review the agency's orders for substantial evidence. RCW 34.05.570(3)(e). Evidence is substantial when it is of a sufficient quality to persuade a fair-minded person of the truth or correctness of the order. City of Redmond v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 136 Wash.2d 38, 46, 959 P.2d 1091 (1998). We reserve credibility determinations for the fact finder and do not review them on appeal. Isla Verde Int'l Holdings, Inc. v. City of Camas, 99 Wash.App. 127, 133-34, 990 P.2d 429 (1999), aff'd on other grounds, 146 Wash.2d 740, 49 P.3d 867 (2002).
Here, the Board heard testimony and reviewed hundreds of pages of scientific and geotechnical and geological studies, reports, and opinions on the mine expansion's impact on the neighboring homes and environment. First, Kenneth Conaway testified that blasting operation debris hit his wife, damaged his and his neighbor's houses, damaged cars on his property, and knocked down his stacked stone wall three times. Also, MSBA Geologic and Environmental Consulting Services stated that "[a]dditional assurances are needed to confirm that fly rock will not emanate from the blasting operation," particularly within 150 feet of the Conaways' home. Supplemental Clerk's Papers (CP) at 91. This substantial evidence supports the Board's decision to impose the blasting mats requirement and to limit the blasting and rock extraction operations to a safe distance from any home.
Next, a neighbor testified that children regularly played in the pit, and deer hunters and off-road vehicle drivers often entered the quarry. Based on that testimony, the Board reasonably required a fence extension for citizen safety.
Next, the Board considered testimony regarding the unknown impact the mining will have on well water. Based on that evidence, the Board reasonably decided to protect the drinking water supply by limiting the rock extraction operation.
*807 Finally, no code, ordinance, or regulation prevents the Board from instituting greater protection to the County citizens by imposing more stringent requirements than those set forth in federal and state regulations. County Resolution 95-167(4)(g) states that "[b]lasting must comply with federal, state, and local regulations." CP at 88 (emphasis added). Also, according to RCW 78.44.121(2),[5] the Department of Natural Resources requires a minimum 30-foot permanent reclamation setback and a 30-foot undisturbed buffer between fence and mine.[6] And the Mine Safety and Health Administration's minimum recommended blasting distance is 300 feet. No code or regulation prohibits conditions facilitating safer mining operations.
In sum, we hold that substantial evidence supported the Board's decision to impose the five disputed conditions on Storedahl's special use permit. These conditions protect homeowners, the public, and the adjacent land, and all are reasonably related to the purpose of the County's Ordinance and Resolution.

Attorney Fees
The Conaways seek attorney fees on appeal under RCW 4.84.370, which provides:
(1) [R]easonable attorneys' fees and costs shall be awarded to the prevailing party or substantially prevailing party on appeal before the court of appeals ... of a decision by a county ... to issue, condition, or deny a development permit involving a site-specific rezone, zoning, plat, conditional use, variance, shoreline permit, building permit, site plan, or similar land use approval or decision. The court shall award and determine the amount of reasonable attorneys' fees and costs under this section if:
(a) The prevailing party on appeal was the prevailing or substantially prevailing party before the county.
(b) The prevailing party on appeal was the prevailing party or substantially prevailing party in all prior judicial proceedings.
Their appeal to the Board led the County to impose additional conditions on Storedahl's special use permit. The superior court affirmed the Board's decision and we also affirm. Thus, the Conaways, as prevailing parties at all three levels of review, are awarded reasonable attorney fees and costs under RCW 4.84.370.
Affirmed.
We concur: MORGAN, A.C.J., and HUNT, J.
NOTES
[1] We refer to the 1996 CCC, not the 2002 version, because Storedahl applied for its permit in 2001, before the adoption of the revised CCC. Under the 1996 CCC, the County Planning Commission approved special use permits, and the Board of County Commissioners reviewed the Commission's decision. Under the 2002 CCC, a Hearing Examiner makes the special use permit decisions, subject to superior court appellate review. Compare former CCC § 18.10.295 and .310 (1996) with CCC § 18.10.295 and . 310 (2002).
[2] Board letter August 13, 2002 in Board Record states:

The Board ... adopts and incorporates the Findings of Fact contained within the Staff Reports filed in such case under dates of July 3, 2001, April 17, 2002 and May 29, 2002, respectively, except insofar as such Findings have been modified pursuant to subsequent action and determination of the Planning Commission or as modified herein. In supplementation or modification of such findings, the Board of Cowlitz County Commissioners specifically finds as follows.
Clerk's Papers at 291.
[3] Storedahl objects to blasting, setback, and fencing conditions.
[4] The Board adopted staff findings and also entered its own findings, and these are sufficient for our review.
[5] "The minimum reclamation setback for consolidated materials within mines permitted after June 30, 1993, shall be thirty feet or as determined by the department." RCW 78.44.121(2).
[6] Storedahl does not contest a 30-foot buffer zone.