[No. 34762. Department One. June 11, 1959.]

BERGER ENGINEERING COMPANY et al., *Respondents and Cross-appellants*, v. CHARLES W. HOPKINS et al., *Respondents,* 143rd & GREENWOOD CORPORATION et al., *Appellants.*[1]

[1]Reported in 340 P. (2d) 777.

*Ferguson & Burdell* and *Donald McL. Davidson*, for appellants.

*Williams, Kinnear & Sharp* and *Morell E. Sharp*, for respondents and cross-appellants Tecler Aluminum.

OTT, J.—June 1, 1955, the 143rd & Greenwood Corporation and E & M Incorporated, hereinafter referred to as E & M, entered into an agreement with Charles W. Hopkins, a building contractor, doing business as C. Hopkins & Associates, hereinafter referred to as Hopkins, for the construction of a four-unit doctors' clinic. The contract provided for a curtain wall fabricated of aluminum bars, designed to hold the aluminum window frames in place, together with aluminum exterior panels which were to be bonded with glue to a backing of eleven-sixteenths inch insulating Cemesto board.

June 3rd, Hopkins subcontracted the aluminum panels and window frame installation to Berger Engineering Company and Seattle Bronze, Inc., doing business as Tecler Aluminum. The joint subcontractors will hereinafter be referred to as Tecler. Tecler's shop drawings of the proposed aluminum installation were approved by Kenneth S. Ripley, architect for E & M. Ripley will be hereinafter referred to as the architect. Both contracts provided for the architect's approval of the completed work before final payment.

Tecler performed its portion of the contract and, on September 22nd, requested payment from Hopkins. September 30th, Tecler's attorney made a second demand for pay-

ment from Hopkins and stated that, if payment was not made within five days, a lien would be filed. October 6th, Tecler filed its claim of lien for the full contract price of $5,498. October 7th, Hopkins furnished Tecler with an "acceptance slip" to be signed by the architect, as required by the contract. October 18th, Tecler forwarded the "acceptance slip" to the architect for his signature. October 26th, the architect specified in writing seven items of imperfections in the aluminum work, which he requested be corrected prior to acceptance.

Tecler attempted to overcome six of the architect's objections. With reference to the remaining objection, which related to several of the aluminum panels that had bulged or blistered, Tecler, in a letter to the architect dated November 21, 1955, stated as follows:

"This leaves number 6—we have examined the panels and can state that they were fabricated with the best shop practice and materials. In this connection, we had the advice of the people who manufacture the adhesive material, and followed their suggested procedures. We can think of nothing that will improve these panels, and believe that they are manufactured to the proper standards."

Tecler received no answer from the architect and, on December 8th, wrote him as follows:

"At your convenience will you please examine the E and M Clinic Building and let us have your certification of acceptance on the form we have previously sent you."

The architect did not answer the letters, and refused to negotiate further with Tecler, but continued to correspond with Hopkins, as provided by the contract.

January 13, 1956, E & M and Hopkins settled and compromised, by written agreement, the extras and remaining balance due on the Hopkins contract, except for the alleged damages E & M claimed from Hopkins for improper workmanship, for its failure to complete the building within the time limit, and for Tecler's defective aluminum work. With reference to the Tecler item, the settlement agreement provided:

"It is understood and agreed that the owner [E & M] is

retaining and is authorized to retain the sum of $5498.00 as security for its damages and to secure and indemnify the owner against any costs, expenses or loss on account of the lien heretofore filed by Tecler Aluminum Co., the contractor [Hopkins] having expressly contested the amount and validity of the said lien."

March 16, 1956, Tecler filed its complaint, asking for judgment against Hopkins, on its first cause of action, for the full amount due on its subcontract, and, on its second cause of action, for foreclosure of its lien upon the E & M property and for attorneys' fees.

Thereafter, the attorneys representing the various parties corresponded relative to the defective aluminum work. The attorneys for E & M demanded of Hopkins that the defects be corrected. The demands were forwarded to the attorneys for Tecler.

April 16, 1956, Hopkins answered the complaint of Tecler, in accordance with its contract and compromise agreement with E & M, and denied that any payment was due Tecler from Hopkins or E & M.

April 17, 1956, E & M answered Tecler's complaint, denied liability and alleged, as an affirmative defense, defective workmanship and lack of the architect's approval. E & M cross-complained against Hopkins alleging (1) $3,500 in damages for the repair of Tecler's defective aluminum work, (2) $7,200 in damages for loss of rent due to the delay in completion of the building, and (3) $4,500 in damages for decrease in the market value of the building due to irreparable defects in workmanship.

April 25th, the attorneys for E & M wrote to Hopkins' attorney as follows:

"We have received no response to our letters of April 10 and April 17, requesting that action be taken to correct the defective aluminum work at the above premises. Please be advised that the owner will take such steps as are possible to remedy these defects, with the purpose of rendering the building tenantable, if possible, and minimizing damages, and will hold you for the costs as well as for damages for those defects in construction which cannot be remedied."

April 26th, the attorney for Hopkins wrote the following letter to Tecler's attorney:

"On April 12th and April 20th I advised you of the demands made by 143rd and Greenwood Clinic for remedying the aluminum defects on their building. Today I have received another demand for remedying such defects, coupled with a notice that the 143rd and Greenwood clinic will proceed to remedy these defects as are possible so as to make the building tenantable. Copy of their letter is enclosed herewith.

"I would appreciate being advised if your client, Tecler Aluminum, intends to do anything on these requests. If they do not, then either my client or the owners would be within their rights in remedying these defects and doing so without waiving any rights or claims against Tecler.

"If your client is, however, intending to take some action on these requests, we believe he should advise us immediately of what he intends to do and when. In the absence of any notice from you by April 30th, we will interpret that to mean that Tecler will not comply with our previous request and the one herein to remedy the defects and minimize the damage."

May 8th, the attorney for Tecler replied to this letter as follows:

". . . We are prepared, in any event, to show substantial compliance with all of the specifications and drawings rendered by Mr. Ripley or approved by Mr. Ripley for use in the building.

"With reference to the blistering, called to our attention in the latest letter from Young, Richardson, Carleton & Detlie, we must observe that the materials installed were in accordance with specifications prepared by the architect. The fact that these new complaints are now being listed, would indicate that Mr. Metzger feels that he has received an unlimited warranty as to the quality and service of the materials installed. We disclaim any warranty of such a nature."

May 10th, Hopkins' attorney forwarded this letter to the attorney for E & M. On the same day, E & M contracted with another aluminum fabricator to correct the defects upon a time and material basis. The cost of the repair was $3,580.88.

August 8, 1956, Hopkins filed an amended answer to Tecler's complaint. It denied liability and counterclaimed against Tecler for any judgment E & M might obtain against Hopkins for damages resulting from the delay caused by Tecler and from improper workmanship. Hopkins also claimed damages in the sum of fifteen hundred dollars for its additional foreman expense, caused by Tecler's delay in completing its work, and for various other items, including an allowance for attorneys' fees as provided by the subcontract. Tecler's reply denied any damages as alleged, either to E & M or to Hopkins. Hopkins' answer to the E & M cross-complaint denied liability.

The issues being thus joined, the cause proceeded to trial before the court. September 27, 1957, the court entered judgment for E & M against Hopkins and Tecler in the sum of $3,580.88 for the repair of Tecler's defective aluminum work, and against Hopkins in the sum of $875 for loss of rent due to the delay caused by Tecler. The court allowed judgment for Hopkins against E & M in the sum of $5,498, the amount withheld by E & M in accordance with the compromise settlement. It allowed judgment for Hopkins against Tecler in the sum of $3,105.90, being $875 for loss of rent, $714 wages for Hopkins' foreman, and $1,516.90 for attorneys' fees and costs. Tecler was granted judgment in the amount of $5,498 against Hopkins, and allowed attorneys' fees in the sum of $500 against E & M for its lien foreclosure.

E & M has appealed, and Tecler has cross-appealed.

Appellant first assigns error to the judgment which was granted to Hopkins and Tecler for final payment, contending that the architect's approval of the work was a condition precedent which was not fulfilled.

■ When Hopkins and his subcontractor, Tecler, failed to obtain the architect's acceptance of the building, due to their alleged defective workmanship, two remedies were available to E & M. It could (1) refuse to accept the building until the contractor had satisfactorily performed the condition precedent, or (2) accept the building and sue for damages.

■ E & M accepted the building when it elected to sue Hopkins for loss of rent and for damages resulting from its having to accept a building which allegedly has a lower market value than that it had contracted to have constructed. This remedy, which E & M pursued to final judgment, constitutes a bar to other remedies as between the same parties. See *Labor Hall Ass'n v. Danielsen*, 24 Wn. (2d) 75, 81, 163 P. (2d) 167, 161 A. L. R. 1079 (1945); *Holt Mfg. Co. v. Strachan*, 77 Wash. 380, 137 Pac. 1006 (1914).

We find no merit in appellant's first assignment of error.

■ ■ Appellant's next assignments of error relate to the insufficiency of the evidence to sustain the trial court's findings of fact and conclusions of law. This court is not a fact-finding branch of the judicial system of this state. The constitution does grant to this court the power to review the trial court's findings. Our appellate review is limited to ascertaining whether the evidence sustains the findings or clearly preponderates against them.

■ In the instant case, the evidence was conflicting, and the facts disputed. To detail the conflicting evidence would serve no needful purpose, as there is substantial evidence to sustain the court's findings of fact and we will not disturb them. *Hinz v. Lieser*, 52 Wn. (2d) 205, 206, 324 P. (2d) 829 (1958), and cases cited; *Mell v. Winslow*, 49 Wn. (2d) 738, 746, 306 P. (2d) 751 (1957), and case cited; *Irwin v. Sanders*, 49 Wn. (2d) 600, 602, 304 P. (2d) 697 (1956), and cases cited. We, therefore, find no merit in these assignments of error.

■ Appellant assigns error to the court's granting Tecler judgment against Hopkins for the full subcontract price. Hopkins has not appealed. Appellant E & M has no appealable interest in the Tecler-Hopkins judgment. E & M admitted that it retained $5,498 due Hopkins on the basic contract, and the court so found. By its failure to appeal, Hopkins assents to the money which is due it from E & M being paid to Tecler.

■ Appellant assigns error to the trial court's findings of a valid labor lien, and allowing attorneys' fees to Tecler

for its foreclosure. Appellant E & M denied the lien claim. The court found that Tecler had proved a lien in the sum of $594. When Tecler prevailed by establishing a part of its lien, it was entitled to recover a reasonable sum for attorneys' fees in connection with its foreclosure. For the reasons stated, we find no merit in this assignment.

■ Appellant assigns error to the court's refusal to allow it attorneys' fees against Hopkins. We find no merit in this assignment for the reason that attorneys' fees were expressly waived. At the trial of the cause, the court asked counsel for E & M:

"Now, Mr. Davidson, are you entitled to an award of attorney's fees against anybody? Mr. Davidson: I don't believe so. I will have to look at the complaint. Mr. Shea: He has asked for it in the prayer. The Court: How do you support it? Mr. Davidson: I don't, and I didn't."

■ Finally, appellant contends that the trial court erred in dismissing the bonding company as a defendant. The amount appellant retained, in accordance with the compromise agreement, to protect it against Tecler's claim, exceeded its judgment against Hopkins by a substantial sum. The court did not err in dismissing the bonding company from the cause.

Tecler's cross-appeal is based upon three contentions, (1) that its work was done in a workmanlike manner and that standard materials were used and properly applied, but that the materials recommended were latently defective and failed to function, (2) that the architect was arbitrary in refusing to detail to Tecler the manner in which the defective work could be corrected, in order to obtain the architect's acceptance, and (3) that the principal item could have been corrected at an expense of fifty dollars.

We find no merit in Tecler's cross-appeal for the following reasons:

■ Contention (1): Cross-appellant called as its witness a representative of the manufacturer of the adhesive materials used. The witness' testimony relating to the reason for the blistering or bulging of the aluminum panels was that it was caused by (1) starved glue line (insuffi-

cient glue) or (2) gas built up behind the panels. The witness explained that gas forms behind the panel through failure to allow enough time for evaporation of the solvent or from the application of too much solvent. He testified, on cross-examination, relative to the workmanship in the application of the materials by Tecler as follows:

"Q. Would it affect your opinion as to the cause for more and more panels developing this condition? A. I would say it was basically the same reason that the original four [panels] did. In other words, it was a condition that was caused by—I hate to use the words 'improper application,' but not prudent application."

Cross-appellant failed to prove a latent defect in the lamination materials.

Contention (2): Cross-appellant admitted, by its letter to the architect quoted previously in this opinion, that it did nothing to correct or attempt to correct the worst of the defects claimed by the architect, namely, the improper lamination of the aluminum panels. Tecler was frequently requested to correct the defect. When the final request was made, cross-appellant replied that the workmanship and materials met the architect's specifications, and that it did not warrant "the quality and service of the materials installed. We disclaim any warranty of such a nature."

When a contract provides for the architect's approval of the contractor's workmanship before payment, and the contractor is notified by the architect that his work has been condemned, the contractor can do one of two things, (1) dispute the contention of improper workmanship or (2) perform the work in such a manner as to remove the defect upon which the condemnation was based.

In the instant case, Tecler elected not to correct an admitted imperfection, but stood upon its contention of proper workmanship. Under these facts, the architect was not arbitrary in demanding correction of the defect. Tecler made no effort of its own to correct it, nor did it make any inquiry of the architect as to his suggested method of correction, except as mentioned hereinafter.

■ Contention (3): Cross-appellant established by its expert witness that the defects in the four panels might have been corrected for an estimated cost of fifty dollars, and therefore claimed that the E & M cost of $3,580.88 was excessive. Although cross-appellant knew, in March, 1956, that the defects could possibly be corrected for fifty dollars, it did not offer to do so or explain its suggested method of correction for the architect's approval. April 26th, Tecler was advised that, if it did nothing toward correction of the defective work by April 30th, E & M or Hopkins would do the corrective work and charge Tecler for it. Subsequent to May 10th, Tecler offered to do the corrective work by the method which would cost fifty dollars, provided the architect would approve it. By that time, the architect had contacted another aluminum fabricator, and had been informed that the suggested application of heat and pressure would discolor the aluminum panels, and he would not approve the suggested method.

Tecler had ample apportunity between October 26th and April 30th to take some steps to eliminate the defect. It was only after the April 30th deadline had passed that Tecler offered to abandon its previous position of standing upon the sufficiency of its workmanship, and suggested the above-mentioned method of correction. Under the facts of this case, the offer to correct the defect was not timely.

Further, the evidence discloses that it is problematical whether the suggested method would, in fact, have accomplished its purpose, and that, after application, expensive corrective work might still have been required. The factual burden of proof relative to excessive correction charges rested upon the cross-appellant. Upon contradictory and conflicting evidence, the trial court found that the cost involved in effecting corrections acceptable to the architect was reasonable.

■ The judgment is affirmed. Neither party having prevailed, each will bear its own costs.

HILL, DONWORTH, ROSELLINI, and HUNTER, JJ., concur.