[No. 12950-7-II.    Division Two.    May 14, 1992.]

THE STATE OF WASHINGTON, *on the Relation of Lige &
Wm. B. Dickson Co., Respondent,* v. THE COUNTY
OF PIERCE, ET AL, *Appellants.*

*Daniel H. Haire,* for appellants.

*Thomas L. Dickson,* for respondent.

MORGAN, J. — The Pierce County Superior Court reinstated an administrative ruling that the Lige & William B. Dickson Company (hereinafter called Dickson) was using certain property as a storage yard for equipment and materials; that that use was a lawful nonconforming use; and that it

therefore did not violate the Pierce County zoning code. Neighbor Daniel H. Haire[1] appeals; we affirm.

Since 1959, Dickson has owned the 25-acre property here in question. In the 1970's, the property was zoned for general use. Pierce County Code ch. 9.72. It was used for gravel mining and an asphalt plant. According to disputed findings discussed below, it was also used as a storage yard for equipment and supplies, and that use was independent of the gravel and asphalt operations.

In 1977, the area was downzoned to Suburban Agricultural. Pierce County Code (PCC) 9.20. Thereafter, industrial activity was generally prohibited but could be continued if it qualified as a lawful nonconforming use. Former PCC 9.06-.800. Dickson soon discontinued its asphalt operation; whether it continued to mine gravel is not clear from the record and not important to the present case. What is important is that according to disputed findings discussed below, it continued to use the property as a storage yard for equipment and supplies, in approximately the same way as it had prior to 1977, and that its use was independent of its gravel and asphalt operations.

In 1982, Daniel Haire complained to the Pierce County Planning Department that the property was being used in violation of the Pierce County zoning code. Then there were a number of events not important here. Finally, on August 28, 1984, the Department determined that Dickson's use of the property did not violate the zoning code because it qualified as a lawful nonconforming use.

Haire appealed the Department's decision to a Pierce County hearing examiner. Like the Department, the examiner ruled that Dickson's use of the property was a lawful nonconforming use and thus did not violate the zoning code. The examiner entered findings and conclusions in support of his ruling.

Haire then appealed the examiner's decision to the Pierce County Council. Initially, the Council upheld the examiner's

---

[1]From the record provided on appeal, we cannot say with certainty whether Haire lived in the neighborhood or whether it was only Haire's parents who lived in the neighborhood. We assume without deciding that it was Haire who lived in the neighborhood, and that he has standing to initiate this litigation.

decision and adopted his findings. Haire then brought a motion asking the Council to reconsider. The ground for the motion was that a clerical error had occurred when a zoning inspector's letter that had been in the hearing examiner's file had been left out of the record provided to each council member. The Council granted reconsideration,[2] reversed its prior ruling, and resolved that the hearing examiner had erred in entering certain findings of fact and conclusions of law. The Council did not enter its own findings of fact or conclusions of law.

Dickson then applied to the Pierce County Superior Court for a writ of review, pursuant to RCW 7.16. Ultimately, that court held that the evidence supported the examiner's findings, and that his findings supported his conclusions. It therefore reversed the Council's decision and reinstated the examiner's.

Haire now appeals to this court. We begin with the standards governing review. Then we discuss the legal and factual issues necessary to decide the case.

I

Our review is governed by RCW 7.16.120.[3] That statute distinguishes between issues of law and issues of fact. On issues of law, we determine whether the decision below was contrary to law. RCW 7.16.120(3). On issues of fact, we determine the competency and sufficiency of the evidence,[4] RCW 7.16.120(4), (5); *Andrew v. King Cy.*, 21 Wn. App. 566, 575, 586 P.2d 509 (1978), *review denied*, 91 Wn.2d 1023 (1979), which

---

[2] We assume without deciding that the alleged clerical error was legally sufficient to warrant reconsideration by the Council.

[3] RCW 7.16 governs court review of boards and tribunals exercising judicial and quasi-judicial functions. RCW 7.16.040. Here, both parties agree, as do we, that all of the involved tribunals were exercising quasi-judicial functions.

[4] The requirement that there be "any competent proof", RCW 7.16.120(4), is necessarily subsumed in the requirement that there be sufficient evidence. RCW 7.16.120(5). RCW 7.16.120(5) was amended in 1989, but the amendment did not work a substantive change. Both before and after, the relevant inquiry was whether there was sufficient or substantial evidence. *Compare Andrew v. King Cy.*, 21 Wn. App. 566, 575, 586 P.2d 509 (1978), *review denied*, 91 Wn.2d 1023 (1979) *with* RCW 7.16.120(5) as amended in 1989.

is the same as determining whether the decision below was arbitrary and capricious. *Andrew*, at 575.

Although we review issues of law de novo, *Parker Roofing Co. v. Pacific First Fed. Sav. Bank*, 59 Wn. App. 151, 156, 796 P.2d 732 (1990), we give deference to factual decisions made below. *Providence Hosp. v. Department of Social & Health Servs.*, 112 Wn.2d 353, 360, 770 P.2d 1040 (1989). We do this by viewing the evidence and the reasonable inferences therefrom in the light most favorable to the party who prevailed in the highest forum that exercised fact-finding authority, a process that necessarily entails acceptance of the factfinder's views regarding the credibility of witnesses and the weight to be given reasonable but competing inferences. *Fisher Properties, Inc. v. Arden-Mayfair, Inc.*, 115 Wn.2d 364, 369-70, 798 P.2d 799 (1990) (credibility); *cf. Wilson v. Steinbach*, 98 Wn.2d 434, 656 P.2d 1030 (1982) (deferring factual decisions to trier of fact by taking reasonable inferences in light most favorable to nonmoving party).

In order to give proper deference on factual issues, it is necessary to determine whether each tribunal below had original or appellate jurisdiction. A tribunal with original jurisdiction has the authority to make findings of fact, *see Berger Eng'g Co. v. Hopkins*, 54 Wn.2d 300, 308, 340 P.2d 777 (1959) (an appellate court "is not a fact-finding branch of the judicial system of this state"), and it is to those findings that we defer in the manner described above. A tribunal with only appellate jurisdiction is not permitted or required to make its own findings, *Berger Eng'g Co. v. Hopkins*, 54 Wn.2d at 308; *Maranatha Mining, Inc. v. Pierce Cy.*, 59 Wn. App. 795, 802, 801 P.2d 985 (1990), and such findings, if entered, are surplusage. *Grader v. Lynnwood*, 45 Wn. App. 876, 879, 728 P.2d 1057 (1986).

■ ■ The Pierce County Superior Court had appellate rather than original jurisdiction. *Andrew v. King Cy.*, 21 Wn. App. at 574; *see Grader v. Lynnwood*, 45 Wn. App. at 879 (in writ of review proceeding, superior court takes no evidence

and enters no findings, but instead uses record made below). On factual issues, its function, like ours, was to decide whether findings of fact made below were supported by substantial evidence. RCW 7.16.120(5); *Andrew v. King Cy.*, 21 Wn. App. at 575. It did not have the authority to enter its own findings of fact, *Andrew v. King Cy., supra*, and although it did so, its findings are surplusage. *Grader v. Lynnwood, supra.*

■ Similarly, the Pierce County Council had appellate rather than original jurisdiction. RCW 36.70.970 provides in part:

> Each county legislative authority electing to use a hearing examiner pursuant to this section shall by ordinance specify the legal effect of the decisions made by the examiner. Such legal effect may vary for the different classes of applications decided by the examiner but shall include one of the following:
> (1) The decision may be given the effect of a recommendation to the legislative authority;
> (2) The decision may be given the effect of an administrative decision appealable within a specified time limit to the legislative authority.

This statute requires that a county legislative body elect between original jurisdiction, which allows it to substitute its judgment for the examiner's on all factual and legal issues, and appellate jurisdiction, which requires that it base its decision on the record made before the examiner and review the examiner's findings of fact only to see if they are supported by substantial evidence. *Maranatha Mining, Inc. v. Pierce Cy.*, at 800-01. The statute does not authorize a combination of these choices, *Maranatha*, 59 Wn. App. at 801 n.6, and a county legislative authority may not define its power in such a way as to incorporate aspects of both alternatives.[5] *Maranatha*, at 802.

---

[5] Contrary to the dissent, we read *Maranatha* as giving two independently sufficient reasons why the examiner's findings were controlling in that case. (1) The Pierce County Council had appellate rather than fact-finding jurisdiction; (2) even if it had fact-finding jurisdiction, it failed to exercise that jurisdiction, thereby leaving the examiner's findings in effect.

The Pierce County Council elected between the available alternatives when it enacted PCC 18.10.630(I)(3) and 18.10-.680(E)(2)(d).[6] PCC 18.10.630(I)(3) provides:

---

[6]In a motion for reconsideration, Haire assails both the majority and dissenting opinions on grounds that they apply PCC 18.10.630(I) and PCC 18.10.680(E), as opposed to former PCC 61.20.130(D) (now codified as PCC 2.36.130(D)). He seems to argue that PCC 18.10.630(I) and PCC 18.10.680(E) were not in effect at the time of the events in this case. However, both provisions were in effect between 1982 and 1986. PCC 18.10.630(I) was then codified as PCC 9.86.260-.300. PCC 18.10.680(E) was then codified as PCC 9.88.220-.230 and PCC 9.88.260-.270. More particularly, PCC 18.10.680(E)(2)(c) was then codified as PCC 9.88.230(3); PCC 18.10.680(E)(2)(d) was then codified as PCC 9.88.230(4); and PCC 18.10-.680(E)(2)(e) was then codified as PCC 9.88.260. For convenience, we have referred in the text to each section as presently codified.

Haire seems to argue that former PCC 61.20.130(D) and present PCC 18.10.680(E) are different. Specifically, he emphasizes the third and fourth sentences of former PCC 61.20.130(D) and says that they demonstrate fact-finding power in the Council even if PCC 18.10.680(E)(2)(e) does not.

We disagree. The third sentence of former PCC 61.20.130(D) says the same thing as PCC 18.10.680(E)(2)(e), although in slightly different language. The fourth sentence of former PCC 61.20.130(D) simply has no significance to the present case. Thus, we conclude that for present purposes, PCC 61.20.130(D) neither adds to nor detracts from PCC 18.10.630(I) and 18.10.680(E)(2)(e).

In any event, even if former PCC 61.20.130(D) and PCC 18.10.680(E) were different, Haire's argument would fail. When a general and a specific ordinance cover the same subject matter, the specific controls over the general to the extent that the two conflict. *Omega Nat'l Ins. Co. v. Marquardt*, 115 Wn.2d 416, 425, 799 P.2d 235 (1990); *General Tel. Co. of the Northwest, Inc. v. Utilities & Transp. Comm'n*, 104 Wn.2d 460, 464, 706 P.2d 625 (1985). Here, former PCC 61.20 is general in the sense that it sets up the office of Pierce County Hearing Examiner and deals with all or most of the proceedings to be conducted by the examiner, as well as with appeals therefrom. PCC 18.10.630(I) is specific in the sense that it deals solely with "[a]ppeals from any order, requirement, permit, decision, or determination made by an administrative official in the administration or enforcement of this Code." PCC 18.10.630(I)(3) is similarly specific in that it deals solely with appeals to the Council from "[t]he decision of the Examiner on an appeal of an administrative decision . . . ." PCC 18.10.630(I)(3) incorporates PCC 18.10.680(E), so in this context PCC 18.10.680(E) is specific to the same degree as PCC 18.10.630(I) and (I)(3). Thus, even if Haire were correct in arguing that former PCC 61.20.130(D) differs from PCC 18.10.630(I) and 18.10.680(E), the latter sections would control.

Finally, Haire seems to argue that the court must apply former PCC 61.20, now PCC 2.36, because the Council did so. Again we disagree. The record does not show that the Council applied PCC 61.20, as opposed to PCC 18.10.630(I) and 18.10.680(E). Even if it did, the nature of the power possessed by the Council is an issue of law. On such issues this court reviews de novo, *Parker Roofing Co. v. Pacific First Fed. Sav. Bank*, 59 Wn. App. at 156, a task that includes identifica-

The decision of the Examiner on an Appeal of an administrative decision may be further appealed to the Council in the same manner as are Appeals of zone changes and permits.

PCC 18.10.680(E)(2)(d) provides:

The Council's decision on an Appeal of all land use matters may adopt, amend and adopt, reject, reverse, amend and reverse the findings, conclusion, and decision of the Examiner or remand the matter to the Examiner for further consideration. Any decision by the Council shall be based on the record of the hearing held by the Examiner; however, the Council may by motion, request additional information of the appellant or the Examiner.

It might previously have been argued that PCC 18.10-.680(E)(2)(d) is ambiguous with respect to the kind of jurisdiction that the Council intended to retain, for it contains features suggesting both original and appellate jurisdiction. *Maranatha*, at 802. However, in *Maranatha*, at 802, a majority of this court ruled that the Council, when it adopted this very ordinance, "opted for an appellate, rather than a primary decision-making role."[7] The result is that the Pierce County Council had appellate rather than original jurisdiction in this case.

In contrast to the Council and the Superior Court, the Pierce County Hearing Examiner had original jurisdiction,

---

tion and application of the proper ordinance. Thus, this court is both entitled and required to apply PCC 18.10.630(I) and 18.10.680(E), so long as that is otherwise appropriate.

[7]Even before *Maranatha* was decided, the attorney for the Council apparently concurred with this view. According to appellant's brief, he told the Council at the beginning of its October 18, 1986, hearing in this case:

Thank you, Mr. Chairman. What you have before you is an appeal. This is the second time the Council has heard this appeal. . . . Of course, all of the parties are aware you are sitting as quasi-judicial officers in a land use proceeding. Your obligation as quasi-judicial officers is to review the evidence that was presented to the examiner, and based upon that evidence, based upon the evidence contained in the record below, was the Examiner's decision correct? Was his decision reasonably made upon the evidence presented?

The essence of this advice was that the Council was to review the examiner's decision, as opposed to exercising original jurisdiction.

including the jurisdiction to find the facts.[8] Under the statutory scheme set forth in RCW 36.70.970 and construed in *Maranatha Mining, Inc. v. Pierce Cy., supra,* a county legislative authority necessarily vests its hearing examiners with original jurisdiction when it elects to make itself an appellate body, and the Pierce County Council did that when it enacted PCC 18.10.680(E)(2)(d).

Summarizing, we review issues of law de novo. On issues of fact, we ascertain whether the hearing examiner's findings of fact are supported by substantial evidence, *Maranatha,* 59 Wn. App. at 801; *Andrew v. King Cy.,* 21 Wn. App. at 575, with the pertinent evidence being that in the hearing examiner's record as opposed to that in the records made before the county council or the superior court. *Maranatha,* 59 Wn. App. at 801; *Grader v. Lynnwood,* 45 Wn. App. at 879; *see also Clark v. Horse Racing Comm'n,* 106 Wn.2d 84, 88, 720 P.2d 831 (1986) (APA case).

## II

The hearing examiner found that from the early 1960's to the date of the hearing before him, Dickson had used the

---

[8]The dissent calls into question the examiner's power to make findings, but it seems to us that that power clearly appears in the Pierce County Code. PCC 18.10.630(I) provides, "The Examiner shall have the authority to hear and decide Appeals from any order, . . . decision, or determination made by an administrative official in the . . . enforcement of this Code." PCC 18.10.630(I)(2)(c) provides that when hearing such appeal, "The Examiner . . . shall have all the powers of the officer from whom the Appeal is taken, . . . and . . . the Examiner may hear any pertinent facts bearing on the case." And PCC 18.10.680(E)(2)(d) provides that when the examiner's decision is appealed to the Council, the Council "may adopt, amend and adopt, reject, reverse, amend and reverse *the findings* . . . of the Examiner." (Italics ours.)

In any event, the only reason to denigrate the examiner's power to make findings is to make it more likely that the Council possessed such power. Yet PCC 18.10.680(E)(2)(c) clearly contemplates that an appeal to the Council will be quasi appellate in nature.

> Whenever a decision by the Examiner is reviewed by the Council pursuant to this section, the appellant or other parties of record may submit written memoranda in support of their positions. The Council shall allow the appellant(s) or their representatives no more than a total of ten (10) minutes of oral presentation. *No new evidence or testimony shall be presented to the Council during the oral presentation.*

(Italics ours.) And the Council's own attorney seems to have believed that the Council did not have fact-finding power. See the preceding footnote.

property as a storage yard for equipment and supplies independent of its gravel mining and asphalt producing activities. Specifically, Dickson had used the property for depositing and sorting demolition materials; storing supplies such as I-beams, angle iron, concrete pipe and timbers; storing building materials; storing and repairing equipment; erecting and using storage sheds; and as the site for a trailer.[9] These uses were permitted by the general use zone that was in effect until 1977, but not by the suburban agricultural zone that was in effect thereafter. However, Dickson continued to have the right to put the property to these uses, even in 1985, because the uses, having never been discontinued, were lawful nonconforming ones.

█ Former PCC 9.06.800 and 9.84.070 were in effect at the time of the examiner's decision. Former PCC 9.06.800 provided that a nonconforming use is:

A lawful use of land or structure in existence on the effective date of this resolution or at the time of any amendments thereto and which does not conform to the use regulations of the zone in which such use is located.[10]

Former PCC 9.84.070 provided that the right to a nonconforming use is lost if the use is "discontinued for a period of one year." Under these code provisions, three elements must be proved in order to establish a lawful nonconforming use: (1) That the use existed on the date specified in the zoning code, (2) that it was lawful, and (3) that after the zoning code took effect, it was not abandoned or discon-

---

[9]The examiner also found that Dickson had used the property for extracting gravel, crushing rock, and making asphalt. These uses are not germane to the present problem, however, for according to the examiner, Dickson's nonconforming use rights arose from the fact that since the early 1960's it had used the property as a storage yard for equipment and supplies, independent of its gravel mining and asphalt activities. Examiner's conclusion of law 5.

[10]The common law definition is in accord. In *Andrew v. King Cy.*, 21 Wn. App. at 570, the court said that generally speaking, a nonconforming use is one that lawfully existed before the enactment of a zoning ordinance or resolution, and that is maintained after the effective date of the ordinance or resolution even though it does not comply with the use restrictions applicable to the area in which it is situated. A recent case to the same effect is *Meridian Minerals Co. v. King Cy.*, 61 Wn. App. 195, 207-08, 810 P.2d 31 (1991).

tinued for 1 year or more. *See Andrew v. King Cy.*, 21 Wn. App. at 570-71. These elements must be proved by the party asserting the existence of the nonconforming use. *See* R. Anderson, *American Law of Zoning* § 6.09 (3d ed. 1986).

The first element was properly established. The examiner found that Dickson used the property as a storage yard for equipment from the early 1960's until the rezone in 1977.[11] Although appellant contends to the contrary,[12] that finding was amply supported by the evidence. The record is replete with assertions from Dickson, both oral and written, that it had so used the property, and it was within the province of the examiner to credit those assertions, notwithstanding conflicting evidence from the appellant.

The second element was properly established. Use of the property as a storage yard for equipment and supplies was unconditionally permitted under the general use zone that was in effect until 1977. Former PCC 9.72.

The third element was properly established. The examiner found[13] that Dickson, after 1977, had not discontinued the use of the property as a storage yard for 1 year or more, and although appellant contends to the contrary, this finding was amply supported by the evidence. As with the first element, the record is replete with assertions from Dickson that it had not discontinued such use, and it was within the province of the examiner to credit those, notwithstanding conflicting evidence from the appellant.[14]

---

[11]Finding of fact 6 states that "various uses have been made of the site from time to time since the early 1960's to the date of the hearing." It then goes on to list the uses that are paraphrased in the text accompanying footnote 9.

[12]Actually, appellant assigns error to the trial court's parallel finding, rather than to the examiner's. In light of the confusion over whose decision is to be reviewed, however, we overlook this technical deficiency. We understand appellant's contention, and we treat it as if it were directed at the examiner's findings.

[13]The finding was denominated as conclusion of law 6, but we treat it as a finding of fact. *State v. Niedergang*, 43 Wn. App. 656, 658-59, 719 P.2d 576 (1986).

[14]With regard to this third element, appellant argues that Dickson's use as a storage yard must necessarily have been interrupted when it leased the property to Canem Systems Electrical Company from 1980 to 1982. However, only 1 acre of

Appellant argues that the examiner erroneously defined the term "contractor's yard", but the argument is of no significance. As Dickson correctly points out, it appears that the examiner simply used the term "contractor's yard" as a shorthand way of describing in combination the various uses to which Dickson had put its property.[15] What is important is not the label used by the examiner, but rather the three elements discussed above — whether the specific uses found by the examiner preexisted the 1977 rezone, whether they were lawful, and whether they were continued without interruption after the rezone. For the reasons already stated, all of those elements were adequately proved.

We have considered appellant's other arguments and find them to be without merit.

Affirmed.

ALEXANDER, J., concurs.

PETRICH, C.J. (dissenting) — The majority has misinterpreted the holding in *Maranatha Mining, Inc. v. Pierce Cy.*, 59 Wn. App. 795, 801 P.2d 985 (1990) and seeks to apply its version of that holding to an issue different from that in *Maranatha*. Therefore, I dissent.[16]

In *Maranatha*, the court was concerned with the authority of the Pierce County Council under section 18.10.680 of the county code to review an examiner's decision to issue or deny an unclassified use permit. That section sets forth the procedure to be followed when applications are made for zone

---

the 25-acre property was leased, and the examiner did not err by finding that there was no interruption in the use of the property as a whole.

[15]Because of the emphasis appellant places on the term "contractor's yard", we have deliberately avoided using it. We have instead said that the property, when all of Dickson's specific uses are taken into account, was used as a storage yard for equipment and supplies.

[16]I dissented in *Maranatha* and I continue to adhere to my views expressed therein. My dissent here acknowledges that *Maranatha* is controlling authority in Division Two.

changes of nonareawide applicability, unclassified use permits, planned development districts and potential zones. PCC 18.10.680(A). In the case under review, we are not concerned with reviews of the examiner's role in considering applications for such zone changes or permits. We are here reviewing a decision of the Pierce County Planning Department as to whether a nonconforming use has been abandoned and the examiner's *review* of that decision. The procedures followed in these matters are governed by PCC 18.10.630(I).[17] The role of the examiner in each of these two situations varies substantially.

In the grant or denial of an application for a zone change or permit, the examiner makes the initial decision or determination. PCC 18.10.680(D)(8), (9). The examiner's findings which support the examiner's decision or determination are

---

[17]PCC 18.10.630(I).

"**I. The Examiner Shall Hear and Decide Appeals of Administrative Decisions.** The Examiner shall have the authority to hear and decide Appeals from any order, requirement, permit, decision, or determination made by an administrative official in the administration or enforcement of this Code.

"1. **Appeals – Time Limit.** Appeals may be taken to the Examiner by any person aggrieved, or by any officer, department, board, or bureau of the County affected by any decision of an administrative official in the administration or enforcement of this Code. . . .

"2. **Appeal – Notice of Time and Place.** Upon the filing of an Appeal with the Planning Department, the matter shall be set for consideration, and notice given . . .

". . . .

"b. Upon receiving notice of the Appeal, the officer from whom the Appeal is being taken shall forthwith transmit to the Examiner all of the records pertaining to the decision being appealed from, together with such additional written report as deemed pertinent.

"c. Scope of Authority on Appeal. The Examiner may, in conformity with this Code, reverse or affirm, wholly or in part, or may modify the order, requirement, decision, or determination appealed from and may make such order, requirement, decision, or determination as should be made and, to that end, shall have all the powers of the officer from whom the Appeal is taken, insofar as the decision on the particular issue is concerned, and in making its determination the Examiner may hear any pertinent facts bearing on the case.

"3. **Appeals to the Council.** The decision of the Examiner on an Appeal of an administrative decision may be further appealed to the Council in the same manner as are Appeals of zone changes and permits."

required specifically. PCC 18.10.680(D)(9). On appeal from the examiner's decision or determination, the County Council may request additional information of the appellant or examiner and may adopt, amend and adopt, reject, revise, amend and revise the findings, conclusions and decisions of the examiner. PCC 18.10.680(E)(2)(d). If the examiner's decision is to be amended or reversed, the Council prepares a written decision giving its findings of fact and conclusions insofar as they may differ from those of the examiner. PCC 18.10.680(E)(2)(e).

Contrasted with the procedure governing applications for a zone change or permit described above is the procedure governing the examiner's review of administrative decisions, the case now before us. Section 18.10.630(I) of the Pierce County Code governs that process. Under this process, the examiner is not the original decisionmaker as he is in the grant or denial of a permit. He is, rather, the first reviewing authority of the Planning Department. The examiner is provided all of the records of the administrative officer pertaining to the determination under appeal together with such additional written report as may be pertinent. PCC 18.10.630(I)(2)(b). While the examiner may reverse, affirm or modify the determination, there is no requirement or provision for findings by the examiner.

It is true, as noted by the majority, that the examiner's decision of an appeal of the administrative decision may be appealed to the Council as are appeals of zone changes and permits. PCC 18.10.630(I)(3). This in turn, within the confines of PCC 18.10.630, refers to PCC 18.10.630(H).

This latter section simply provides that appeals to the Council must be made within 10 days of the examiner's decision and that the Council's procedures "as to meeting notice and review shall be the same as set forth in Section 18.10.680 of this Code." PCC 18.10.630(H)(2). This is scant authority to elevate the examiner's findings reviewing an administrative decision to the exalted position in which the majority places them when they were neither provided for nor required by the code.

Since the county code makes no provision for findings or conclusions by the examiner in his review of administrative decisions by the Planning Department, I would focus on the decision made here by the Council. In my view, the Council's decision cannot be classified as arbitrary or capricious.

If my analysis of the differing roles of the examiner in reviewing administrative decisions and in the approval or rejection of zone changes is a distinction without a difference, there is yet another compelling reason why I dissent. We have here a classic example of the process by which dictum in an earlier ruling is elevated to the lofty status of judicial precedent without any supporting analysis.

The majority at page 619 states that *Maranatha* determined that RCW 36.70.970 does not authorize the County's legislative body to combine a system that allows it to substitute its judgment for the examiner with a system that limits its role on factual issues to determine only if the examiner's findings are supported by substantial evidence. According to the majority, the County's choice of systems stripped the Council of any authority to alter the examiner's factual determinations.[18] Having determined that the Council in essence lacks fact-finding authority, the majority focuses on the examiner's findings since in the majority's view the examiner was the "highest forum that exercised fact-finding authority." Majority, at 618. In light of the appellate court's deference given to the factfinder's views on credibility and the weight given competing inferences by him, the majority comes to the predictable result of affirming the examiner's findings.

The majority is in error. *Maranatha* did point out that the statute's two choices outlined in RCW 36.70.970 were to confine the examiner's authority to making recommendations with the decision reserved solely to the legislative body or

---

[18]This will come as some surprise to the Pierce County Council since the county ordinance expressly allows the Council to "adopt, amend and adopt, reject, reverse, amend and reverse the findings . . . of the Examiner." PCC 18.10.680(E)(2)(d). It will no doubt come as a surprise to many legislative bodies of counties and municipalities that have adopted similar ordinances or resolutions. *See* Tacoma Municipal Code 1.23.130; Thurston County Code 2.06.080; Kitsap County Code 2.60.050.

whether the examiner will be the decisionmaker with the legislative body acting in an appellate role. The statute does not place limits on the legislative body's ability to make factual determinations insofar as such determinations differ from the examiner's. While the majority there implied that a combination of features may be inappropriate, it was careful to note that the Pierce County Code provided that if the Council decides to amend or reverse the examiner, it must prepare a decision with findings and conclusions insofar as they may differ from the examiner's. *Maranatha*, 59 Wn. App. at 802. It did not strike down the Council's authority to make its own findings and conclusions so long as they may differ. It did not limit the Council's authority solely to that of determining whether or not the examiner's findings were supported by substantial evidence. The majority in *Maranatha* wisely refrained from making such a broad pronouncement. The essence of the majority's holding in *Maranatha* is contained in the following:

> It follows, under the general law coupled with the specifics of the Pierce County Code, that the Council was not required to make findings unless it disagreed with the examiner's. It also follows that because the Council did not make findings it did not disagree with the examiner's findings and is, therefore, bound by them.

*Maranatha*, 59 Wn. App. at 802.

Implicit in *Maranatha*'s holding is the proposition that if the Council disagreed and entered findings, the Council's decision would be the final administrative decision. Such would appear to be consistent with the intent of the Legislature in enacting RCW 36.70.970.[19]

---

[19]When Senate Bill 2421, which was ultimately codified into RCW 36.70.970, in its early stages was considered by the Senate, Senator Goltz, in response to Senator Francis's concerns about the broad authority of the hearing examiner, stated, in part:

> It is my impression that the legislative body however, and this may not be an answer to your question, it may have been the question I was anticipating. The legislative body does retain final jurisdiction of the matter and it does set the specific conditions under which the hearing examiner is to operate.

Senate Journal Register, 1st Ex. Sess. (1977).

Because these comments were to an early version of the bill, which was ultimately revised by virtue of the free conference, they may be of little help in

In the event the county legislative authority elects to adopt the hearing examiner system in land use matters, two options are available. In one, the examiner's decision is merely a recommendation and the decision is reserved to the county council. In the other, the County allows the examiner's decision to stand unless the decision is appealed within the specified time limits. In the event of an appeal, the County's legislative body may approve, reject, amend or alter the examiner's decision. There is nothing to suggest that the statute limits the County's legislative body's authority in the latter option. As a matter of fact, such an interpretation is in keeping with the State Legislature's concept of administrative review of an administrative law judge's decision in at least one state agency.[20]

Finally, in my view, the Council did enter a critical finding of fact, contrary to the examiner's finding, which deprives Lige & William B. Dickson Company's status as a lawful nonconforming user of the premises. The examiner in a finding, but stated as a conclusion in conclusion of law 6, determined,

> 6. The evidence, although not conclusive, is sufficient by a preponderance to establish that since June 1977, Lige Dickson Company has not discontinued nor intended to abandon, such use for a period of one year.

The Council in resolution R 86-172 determined, contrary to the examiner, the following:

> Whereas, the Pierce County Council found that the Hearing Examiner erred in Finding Number 5[21] and Conclusion Num-

---

determining the issue. Nevertheless, there was obvious concern in the Legislature that ultimate authority in such matters be lodged with the county legislative body.

[20]The Commissioner of Employment Security is authorized to affirm, *modify* or set aside a decision by an administrative law judge on a disputed claim for benefits and make findings in support of the Commissioner's decision. RCW 50.32.080, .097.

[21]The examiner's finding 5 recited that the Planning Department determined that Lige & William B. Dickson Company has nonconforming rights to use its gravel pit as a contractor storage yard.

ber 6 in finding and concluding that Lige Dickson Company had proved by a preponderance of the evidence that the site had been used as a contractor's storage yard continuously since 1976.

Although not in the form of a finding that is commonly rendered by a trial court, it is obvious that the Council found on conflicting evidence that Lige & William B. Dickson Company did not use the site as a contractor storage yard continuously since 1976 and by inference has discontinued use of the site for a 1-year period. Since, as the majority has observed, the evidence was conflicting in this critical factual issue the Council's finding is supported by substantial evidence. I would reverse the Superior Court's ruling and affirm the ruling by the Pierce County Council.

After modification, further reconsideration denied June 17, 1992.

Review denied at 120 Wn.2d 1008 (1992).