IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Parentage of: | ) | No. 31635-1-III |
| | ) | |
| Z.B. | ) | |
| | ) | |
| Minor Child, | ) | |
| | ) | |
| D.B. | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| E.B. | ) | |
| | ) | |
| Respondent. | ) | |

LAWRENCE-BERREY, J. — D.B., a father, appeals the trial court's parenting plan modification, which he claims reduced his residential time with his son, Z.B. He contends the modification of the residential schedule is inconsistent with the trial court's finding that Z.B. (1) had been integrated into his father's family and (2) a shared residential schedule had evolved. Finding no error, we affirm.

## FACTS

D.B. and E.B. are the parents of Z.B. In 2006, the court awarded E.B., the mother, primary residential placement of Z.B., who was four years old at the time. The final residential plan allowed Z.B. to reside with D.B., the father, from Wednesdays at 4:00 p.m. to Saturdays at 10:00 a.m. every other week. On the alternate week, Z.B. resided with his father from Wednesday at 4:00 p.m. to Thursday at 4:00 p.m.

It is undisputed that during the 2010/2011 school year, the parties began to deviate from the ordered schedule. The parties disagree as to the exact schedule, but both agree that Z.B. was spending approximately one-half of his time with his father. The change in schedule was primarily due to his mother's new job at Wendle Ford that required her to work until 8:00 p.m. several nights per week. The father's work schedule allowed him to pick up Z.B. from school and keep him at his house until Z.B.'s mother could pick him up about 8:30 p.m. However, in November 2011, after Z.B. began struggling in school, the parents agreed that Z.B. should stay overnight with his father when his mother worked until 8:00 p.m. This schedule continued until the fall of 2012, when the mother informed Z.B.'s father that her boyfriend would be caring for Z.B. on the nights that she worked.

In September 2012, D.B. petitioned to modify the parenting plan, contending the parties had substantially deviated from the original residential schedule. He claimed that for the previous two years, Z.B. had stayed with him approximately five nights per week and had been integrated into his family with the mother's consent. The father proposed that he be awarded primary custody and that the mother have the following residential time during the school year: Week 1: Sunday at 8:00 p.m. to Wednesday morning. Week 2: Saturday at 8:00 p.m. to Monday morning. In support of his motion, the father submitted a calendar exhibit showing that Z.B. had stayed with him from September 2, 2011, to September 1, 2012.

The mother opposed the motion and disputed integration as a basis for modification. She conceded that "adjustments" had been made, but that these changes did not rise to the level of a substantial deviation. She maintained that Z.B. spent no more than three overnights per week with his father and disputed at least nine of the overnights in the father's exhibit.

A superior court commissioner found adequate cause to proceed to trial, finding Z.B. was spending equal time with both parents in significant deviation from the original plan. The commissioner discussed the father's exhibit:

> But when the father submits his kind of history of precisely what's happened in the 12 months before filing his petition it seems to indicate well you know some of the months there's less than half the overnights that are spent with dad and some of the months there are more than half of the overnights being spent with dad. . . . Assuming that's accurate this child appears to be spending about half the time with each of the parents. . . . [T]hat results in a significant deviation from an original plan of 60/40.

Clerk's Papers (CP) at 69.

The commissioner ordered the parties to follow a roughly equal residential schedule that accommodated the mother's work schedule.

The case proceeded to trial. The father testified that he has worked for the United States Post Office for 11 years and has a regular 7:00 a.m. to 2:30 p.m. shift, which leaves him available for Z.B. after school. He testified that between September 2011 and January 2013, Z.B. stayed with him approximately one-half of the time. He stated that he wanted the residential schedule modified to reflect this changed schedule and to follow the mother's work schedule.

The mother agreed that Z.B. should continue to stay with the father on the nights she works until 8:00 p.m. However, she asked that Z.B. be allowed to take the bus home after school on the nights she worked until 5:00 p.m. The mother proposed a residential schedule that accommodated her work schedule as follows:

4

> **Week 1:** On Sunday from 10:00 am.-5:30 pm.
> After school on Monday until the child returns to school Tuesday morning;
> And Friday after school until Saturday at 6:30 pm;
> **Week 2:** After school on Wednesday until the child returns to school on Friday morning.
> **Week 3:** After school on Tuesday until the child returns to school Wednesday Morning;
> And Friday after school until Sunday at 5:30 pm.

Resp't's Ex. 100.

The trial court granted the petition for modification, finding a "substantial change in circumstances has occurred." CP at 96. Specifically, the court found that Z.B. had been integrated into the father's family with the mother's consent in substantial deviation from the original residential schedule. It then cited the following facts that had arisen since the original decree:

> Each parent obtained new employment resulting in a change of the 2007 schedule. In addition, [Z.B.] began having some issues at school, and the parents came together and agreed to adjust the prior schedule. The Court finds that the parties have shared parenting responsibilities and both parents have a significant influence on [Z.B.'s] life. As such, it is in his best interests to adopt the Final Parenting Plan.

CP at 96.

The court imposed the following schedule in the final parenting plan:

5

### 3.2 School Schedule

Upon enrollment in school, the child shall reside with mother, except for the following days and times when the child shall reside with or be with the father:

from Friday after school, or 3 pm, to Sunday at 6:30 pm every other week.

In addition, the child shall reside with the father on those evenings that the mother works until 8 pm or later from after school or 3 pm to the following day, return to school or 9 am.

CP at 100.

The court noted that at the time of trial, the mother was scheduled to work until 8:00 p.m. for 5 out of 21 days. The court added that if the mother's schedule should change, the father should have as many overnights as contemplated by the schedule.

In its oral decision, the court explained its decision:

[I]n my view, both of the parents have exercised a parenting role. At this point, I think to say who is primary other than the usual designation of primary parents on the odd and even years for purposes of tax purposes so they can take the tax exemption, is just not here.

I will be frank. I am not one of these people that gets into a lot of minutia . . . . I look at it a little bit more holistically. Both of these parents are exercising significant influence on [Z.B.'s] life at this point.

Report of Proceedings (RP) at 290.

The court found that the parties had worked together to address Z.B.'s needs, which resulted in "shared parenting." RP at 289. It also recognized the existence of

6

Z.B.'s other family members, including a half-sister, and stated that Z.B. should take the bus to his mother's house if she was off work by 5:00 p.m., so that he could have time with these other family members.

The father filed an objection to the proposed final parenting plan, arguing that the final order did not conform to the commissioner's findings at the adequate cause hearing, in which the commissioner ordered a 50/50 schedule. The mother countered that the trial court's decision supersedes the commissioner's ruling. The trial court denied the father's motion. The father appeals.

## ANALYSIS

The issue is whether the trial court abused its discretion in modifying the parenting plan. We review a trial court's decision to modify a parenting plan for an abuse of discretion. *In re Marriage of Zigler*, 154 Wn. App. 803, 808, 226 P.3d 202 (2010). This broad discretion is due to the trial court's unique opportunity to observe the parties, determine their credibility, and sort out conflicting evidence. *In re Marriage of Woffinden*, 33 Wn. App. 326, 330, 654 P.2d 1219 (1982). A court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or reasons. *In re Marriage of Kovacs*, 121 Wn.2d 795, 801, 854 P.2d 629 (1993). A court's decision is based on untenable reasons "if it is based on an incorrect standard or the facts do not meet

7

the requirements of the correct standard." *In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997).

We review the superior court's findings to determine if they are supported by substantial evidence. Substantial evidence is that sufficient to persuade a fair-minded person of the finding's truth. *City of Tacoma v. William Rogers Co.*, 148 Wn.2d 169, 191, 60 P.3d 79 (2002) (quoting *Fred Hutchinson Cancer Research Ctr. v. Holman*, 107 Wn.2d 693, 712, 732 P.2d 974 (1987)). An appellate court may not substitute its evaluation of the evidence for that made by the trier of fact. *Goodman v. Boeing Co.*, 75 Wn. App. 60, 82-83, 877 P.2d 703 (1994), *aff'd*, 127 Wn.2d 401, 899 P.2d 1265 (1995). "The substantial evidence standard is deferential and requires the appellate court to view all evidence and inferences in the light most favorable to the prevailing party." *Lewis v. Dep't of Licensing*, 157 Wn.2d 446, 468, 139 P.3d 1078 (2006) (citing *State ex rel. Lige & William B. Dickson Co. v. Pierce County*, 65 Wn. App. 614, 618, 829 P.2d 217 (1992)).

Because changes in residence are highly disruptive to children, we employ a strong presumption against modification of a parenting plan. *In re Custody of Halls*, 126 Wn. App. 599, 607, 109 P.3d 15 (2005). A two-step process to modify a parenting plan implements that policy. *Zigler*, 154 Wn. App. at 809. First, the parent seeking

modification must file an affidavit showing adequate cause. RCW 26.09.270. If adequate cause is shown, the court will then move to the second step: a full hearing. *Zigler*, 154 Wn. App. at 809. The moving party must show that "(1) a substantial change occurred in circumstances as they were previously known to the court, (2) the present arrangement is detrimental to the child's health, (3) the modification is in the child's best interest, and (4) the change will be more helpful than harmful to the child." *Id.* (citing RCW 26.09.260(1), (2)(c)). The purpose of these procedures is to "protect stability by making it more difficult to challenge the status quo." *In re Parentage of C.M.F.*, 179 Wn.2d 411, 419-20, 314 P.3d 1109 (2013).

In applying this standard, the trial court "shall retain the residential schedule established by the decree or parenting plan" unless one of four factors is met. RCW 26.09.260(2). The factor pertinent to this case is: "The child has been integrated into the family of the petitioner with the consent of the other parent in substantial deviation from the parenting plan." RCW 26.09.260(2)(b).

The father argues that the modified residential schedule is inconsistent with (1) the court's finding that integration and a shared residential schedule had occurred and (2) the commissioner's order to equally divide the residential schedule between the parents. He maintains the court failed its duty to develop a shared schedule by reducing

9

his time from the original parenting plan and erred in failing to apply RCW 26.09.187 and RCW 26.09.187(3)(b).

The father fails to show how the court abused its discretion in modifying the residential schedule. Contrary to his argument, the court was not bound by the commissioner's adequate cause findings. An adequate cause hearing simply determines whether the moving party has met the threshold burden of showing a substantial change in circumstances to warrant a full hearing on the petition. *In re Marriage of Lemke*, 120 Wn. App. 536, 540, 85 P.3d 966 (2004). "The primary purpose of the threshold adequate cause requirement is to prevent movants from harassing nonmovants by obtaining a useless hearing." *In re Marriage of Adler*, 131 Wn. App. 717, 724, 129 P.3d 293 (2006).

Similar to the commissioner, the court found that the parties had substantially deviated from the original parenting plan to accommodate the mother's work schedule. Accordingly, it modified the parenting plan to follow that schedule, ordering the parties to divide weekends equally and providing that Z.B. would reside with the father on the nights the mother worked until 8:00 p.m.

Citing RCW 26.09.187(3)(b), which provides for a child to spend substantially equal intervals of time with each parent, the father contends that the court's failure to order a 50/50 division of residential time constitutes an abuse of discretion. However, his

10

reliance on this statute is misplaced. Modification proceedings are governed by RCW 26.09.260, not RCW 26.09.187. RCW 26.09.187(3)(b) addresses the initial child placement decision and applies to parenting plans calling for frequent moves between households for brief and substantially equal intervals. The court here did not enter this type of plan. The requirements of RCW 26.09.187(3)(b) are thus inapplicable.

In the end, the father finds error in the court's failure to order a 50/50 division of residential time. However, the record reflects that in modifying the residential schedule, the court considered the parties' respective work schedules, Z.B.'s relationship with his sister and other family members, and the schedule the parties had maintained for at least one year before the petition was filed. In doing so, it carefully tailored a schedule that promoted continuity and served the best interest of Z.B, as required by RCW 26.09.260. It did not abuse its discretion in doing so.

The mother asks for attorney fees on appeal under RAP 14.1, RAP 14.2, and RAP 14.3. RAP 14.1, RAP 14.2, and RAP 14.3 authorize an award of costs, including statutory attorney fees, to the substantially prevailing party on appeal. The mother is the substantially prevailing party in this appeal and is, therefore, entitled to costs as defined in RAP 14.3.

No. 31635-1-III
*In re Parentage of Z.B.*

We affirm.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

WE CONCUR:

Lawrence-Berrey, J.

Korsmo, J.

Fearing, J.

12