238 P.3d 1226 (2010)
STATE of Washington, Respondent,
v.
Edwin Troy HAWKINS, Appellant.
No. 28118-3-III.
Court of Appeals of Washington, Division 3.
September 9, 2010.
*1227 Carl Edward Hueber, Winston & Cashatt, Spokane, WA, for Appellant.
Eric C. Biggar, Douglas County Prosecutors Office, Waterville, WA, for Respondent.
KORSMO, A.C.J.
¶ 1 This case involves a prosecution for possession of stolen orchard equipment. We conclude that the defense of good faith claim of title does not apply to possession of stolen property cases. We also believe the trial court erred in excluding evidence concerning the motive for Mr. Hawkins's in-laws to frame him for the crime, but the error was harmless on the two counts for which Mr. Hawkins was convicted. The convictions are affirmed.

FACTS
¶ 2 Edwin Hawkins manages his wife's orchard operations in Douglas County. She owns or leases several orchards and operates under the name of Sundance Slope. The couple moved to the area from Texas in 2004. Her family was already established in the orchard industry and ran a packing cooperative, Manson Growers.
¶ 3 There was a falling out between Sundance Slope and Manson Growers after the Hawkins's publicly accused the cooperative of overcharging. The business relationship was *1228 severed and the cooperative is alleged to have lost substantial business over the accusations. Hard feelings developed between the England family (Mrs. Hawkins's family) and the Hawkins family.
¶ 4 Mr. Hawkins would look at other orchards that became available for lease or purchase and was familiar with equipment on those lands. He looked at two properties that had been formerly leased by Zirkle Fruit from RLF Columbia Land Holdings (RLF): the Twin W orchard and Beebe Ranch. The lease between Zirkle and RLF terminated at the end of 2005. Robert Morrison had managed the orchards for Zirkle. He lost his position when the lease was terminated, but later was hired by RLF to monitor the orchards.
¶ 5 Sundance Slope leased a portion of the Twin W property in 2006. Sundance declined to take possession or use a pair of Air-O-Fan sprayers that had been used by Zirkle. An inspector had reported to Mr. Hawkins that they did not work well. Mr. Hawkins also looked at the Beebe Ranch property, but Sundance Slope declined to lease that land. Part of the Beebe Ranch property that was available for lease included a Kubota 7030 tractor (RLF Kubota) and a Landini tractor (RLF Landini). Sundance Slope also owned a Kubota 7030 tractor and a Landini tractor; both had been purchased in 2005.
¶ 6 In April 2006, Mr. Morrison discovered that the Air-O-Fan sprayers, the RLF Kubota, and the RLF Landini were missing. He reported the theft to the Douglas County Sheriff. He also alerted the area orchardists.
¶ 7 Len England, Mrs. Hawkins's uncle, reported to Morrison in August 2006, that the two sprayers could be found on a portion of the Twin W orchard leased by Sundance Slope. He provided pictures he had taken of the sprayers on the Sundance Slope land. Mr. Morrison reported this to the sheriff's office. A warrant was obtained and detectives found the sprayers located on the Sundance Slope portion of the property. Mr. Hawkins denied any involvement with the sprayers; no charges were filed at the time.
¶ 8 Gloria Bailey, who lived near where the sprayers were found, reported that she had seen a strange blue truck on the property between 12:30 and 1:00 a.m. the week before the sprayers were discovered. Mr. Morrison owns a blue truck. Mrs. Bailey testified that the sprayers had not been at that location the week before they were discovered.
¶ 9 Mrs. Hawkins consented to law enforcement inspecting the Sundance Slope equipment on October 24, 2006. They checked serial numbers for the Hawkins's Landini and the Hawkins's Kubota, and apparently determined that the tractors were not the missing RLF tractors. No missing RLF property was located.
¶ 10 In early 2007, Mr. Hawkins began getting the Sundance Slope tractors ready for the upcoming year. The Kubota would not start, so a repairman was called in. The repairman discovered that the tractor had four-wheel drive problems and recommended that it be taken to Valley Tractor in East Wenatchee for repair. He later testified that this was not the same Kubota that he had helped Mr. Hawkins purchase in 2005.
¶ 11 Employees of Valley Tractor discovered that the serial number had been ground off the Kubota. Based on previous repairs they had made, they determined the tractor was the RLF Kubota. They called the police. Law enforcement advised Valley Tractor to call when the Kubota was being picked up.
¶ 12 Mr. Hawkins was advised that the tractor was ready and went down to Valley Tractor on June 8, 2007. The tractor failed to start, so he left it. An officer arrested him as he drove away. Mr. Hawkins testified that he was not told why he was arrested, but believed it involved the sprayers. The deputy testified that he told Mr. Hawkins he was being arrested for possession of stolen property regarding a tractor. Mr. Hawkins was released.
¶ 13 The following day he drove to Valley Tractor and picked up the Kubota. An officer again stopped him while he was driving through downtown Chelan. The officer did not detain him, but advised that the Kubota tractor was the reason he had been arrested *1229 the previous day. Mr. Hawkins drove the Kubota home. Police obtained a warrant and seized the tractor on June 11 from the Sundance Slope shop.
¶ 14 Dale England, also an uncle of Mrs. Hawkins, worked as a deputy sheriff for Chelan County. He called Douglas County Deputy Sheriff Dean Schlaman on September 11, 2007, to report that he saw the missing RLF Landini tractor being towed by the Hawkins's truck. Deputy Schlaman stopped the truck but was unable to determine if the tractor was the stolen one. Deputy England later called Deputy Schlaman to pass on a report that someone had been grinding serial numbers from tractors. Deputy Schlaman talked to the source of that report, who denied knowing about any such activity.
¶ 15 Ultimately, charges of unlawful possession of the sprayers, the RLF Landini and the RLF Kubota tractors, and one count of attempted unlawful possession of the RLF Kubota, were filed.[1] Numerous motions in limine were filed and ruled upon. The prosecutor sought to exclude evidence that the England family were responsible for framing Mr. Hawkins. Both attorneys stated that they would not be calling any England family member as a witness. Defense counsel argued that "every single item of property that was found has England fingerprints on it ... why is it that the England's [sic] are involved in every aspect of this case?" He went on to tell the court: "I'm not going to claim or say or even present any evidence that they were involved, that they stole this equipment," but also argued that the jury should know about the family's involvement. The court reserved ruling on the motion until such time as the evidence was offered.
¶ 16 The motion was revisited again after opening statements. Defense counsel reiterated that he was not going to prove that the England family actually took the stolen property and moved it onto his client's land, but the jury should be able to infer that they did. The court again reserved ruling.
¶ 17 The topic did not return again until the direct examination of Mrs. Hawkins by defense counsel. He asked her why she no longer marketed her apples through Manson Growers. The prosecutor objected and the jury was excused. When asked to explain the relevance of the information, defense counsel explained that the jury had heard about the involvement of England family members in the reporting of the stolen property. He wanted Mrs. Hawkins to explain that the family was not in harmony and that the reason was the financial dispute which was a "possible motivation for why these folks are doing it ... it demonstrates that they really don't care for each other." The prosecutor pointed out that the defense was responsible for developing the evidence of family involvement and that the State would have to put on rebuttal testimony explaining the motivation, which he also did not believe was relevant to the question of whether Mr. Hawkins knowingly possessed stolen property.
¶ 18 Defense counsel clarified that "[t]he only testimony I'm eliciting from this witness is that she does not market her apples through Manson Growers any longer because they had a dispute with the manner in which the way Manson Growers was doing business." The court ruled that the evidence was not relevant and that the jury should not be allowed to speculate.
¶ 19 In closing, defense counsel argued that someone was trying to ruin the reputation of the Hawkins family. Counsel contended that his client did not knowingly possess stolen property and suggested it was not stolen at all because Morrison, the property manager, had likely moved the items onto Sundance Slope land. There was no reason for his client to take the unusable sprayers or unneeded tractors, and he certainly was not stupid enough to take stolen tractors with defaced serial numbers to dealerships that had previously worked on his own tractors. Counsel also noted the involvement of Deputy England in the Landini investigation.
¶ 20 The jury acquitted Mr. Hawkins on the charges relating to the sprayers and the *1230 Landini tractor. He was convicted of possession of stolen property and attempted possession of stolen property of the Kubota tractor. He sought a new trial, arguing that the court had erred by excluding his defense. The trial court denied the motion. A standard range sentence of four months, with two months served in home detention, was imposed. This appeal timely followed.

ANALYSIS
¶ 21 Mr. Hawkins argues that the trial court should have sua sponte instructed on the good faith claim of title defense or that his counsel erred by not proposing one. He also argues the trial court erred by excluding evidence that his wife's family had motivation to frame him for the crimes. We will address each claim in turn.

Good Faith Claim of Title
¶ 22 The Legislature defined the term "theft" in RCW 9A.56.020(1). In the following subsection, it also provided a defense to the crime of theft:
(2) In any prosecution for theft, it shall be a sufficient defense that:
(a) The property or service was appropriated openly and avowedly under a claim of title made in good faith, even though the claim be untenable.
RCW 9A.56.020. When there is sufficient evidence to instruct on this defense, it is the prosecution's obligation to disprove the defense beyond a reasonable doubt. State v. Hicks, 102 Wash.2d 182, 187, 683 P.2d 186 (1984).
¶ 23 The parties dispute whether this claim can be raised initially on appeal. RAP 2.5(a). Because the claim essentially raises a legal question with a sufficiently developed factual record for review, and does so in the context of the constitutional guarantee of effective assistance of counsel, we will exercise our discretion to consider the issue. RAP 2.5(a)(3); State v. McFarland, 127 Wash.2d 322, 333, 899 P.2d 1251 (1995).
¶ 24 The Sixth Amendment guarantees the right to counsel. More than the mere presence of an attorney is required. The attorney must perform to the standards of the profession. Effectiveness of counsel is judged by the two prong standard of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). That test is whether or not (1) counsel's performance failed to meet a standard of reasonableness, and (2) actual prejudice resulted from counsel's failures. Id. at 690-692, 104 S.Ct. 2052. In evaluating ineffectiveness claims, courts must be highly deferential to counsel's decisions and there is a strong presumption that counsel performed adequately. A strategic or tactical decision is not a basis for finding error. Id. at 689-691, 104 S.Ct. 2052. When a claim can be disposed of on one ground, a reviewing court need not consider both Strickland prongs. State v. Foster, 140 Wash.App. 266, 273, 166 P.3d 726, review denied, 162 Wash.2d 1007, 175 P.3d 1094 (2007).
¶ 25 This case can be easily disposed of on the first Strickland prongthere was no error. By its very terms, the statutory defense in RCW 9A.56.020(2) applies to a "prosecution for theft." It does not address theft-related crimes such as possession of stolen property.
¶ 26 The result was different under the former criminal code. State v. Smyth, 7 Wash.App. 50, 499 P.2d 63 (1972). Prior to the enactment of the current criminal code in 1975, the same statutory defense was found in former RCW 9.54.120 (1909):
Claim of titleWhen ground of defense. In any prosecution for larceny it shall be a sufficient defense that the property was appropriated openly and avowedly under a claim of title preferred in good faith, even though the claim be untenable.
¶ 27 With the exception of the use of the words "theft" instead of "larceny" and "made" for "preferred," the current defense is identical to the former statute. The crime of possession of stolen property was part of the larceny statute under the former criminal code. The former larceny statute, RCW 9.54.010 (1915), stated:
Every person who, with intent to deprive or defraud the owner thereof

*1231 (1) Shall take, lead or drive away the property of another; or
(2) Shall obtain from the owner or another the possession of or title to any property, real or personal, by color or aid of any order for the payment or delivery of property or money or any check or draft, knowing that the maker or drawer of such order, check or draft was not authorized or entitled to make or draw the same, or by color or aid of any fraudulent or false representation, personation or pretence or any false token or writing or by any trick, device, bunco game or fortune-telling; or
(3) Having any property in his possession, custody or control, as bailee, factor, pledge, servant, attorney, agent, employee, trustee, executor, administrator, guardian or officer of any person, estate, association or corporation, or as a public officer, or a person authorized by agreement or by competent authority to take or hold such possession, custody or control, or as a finder thereof, shall secrete, withhold or appropriate the same to his own use or to the use of any person other than the true owner or person entitled thereto; or
(4) Having received any property by reason or a mistake, shall with knowledge of such mistake secrete, withhold or appropriate the same to his own use or to the use of any person other than the true owner or person entitled thereto; and
(5) Every person who, knowing the same to have been so appropriated, shall bring into this state, or buy, sell, receive or aid in concealing or withholding any property wrongfully appropriated, whether within or outside of this state, in such manner as to constitute larceny under the provisions of this chapter
Steals such property and shall be guilty of larceny.
¶ 28 Smyth involved a prosecution for possession of stolen property under subsection (5) of the former larceny statute. Because the possession of stolen property statute was considered a form of larceny, the Smyth court concluded that the statutory defense to larceny also applied to possession of stolen property. Smyth, 7 Wash.App. at 55, 499 P.2d 63.
¶ 29 Under the modern criminal code, however, the crime of possession of stolen property is separated from theft and is found in RCW 9A.56.140 through .170. The essence of the modern crime is possession of stolen property knowing it to be stolen. RCW 9A.56.140(1). There is no theft component to the crime and it is not declared to be larceny or theft.
¶ 30 In light of the separation of the statutes and the limitation of the defense to the theft offenses, the statutory defense has no application to modern possession of stolen property cases.
¶ 31 Even if the defense still applied to possession charges, it would not apply to the facts of this case. Mr. Hawkins did not claim in good faith that he owned the RLF Kubota tractor. Rather, he thought the tractor he was possessing was his own tractor. This mistake of fact presents issues of unwitting possession and lack of knowledge that the tractor was stolen. It does not present a factual basis for finding that he believed he was entitled to ownership of the RLF Kubota.
¶ 32 For both reasons, the good faith claim of title defense was not applicable to this case. Accordingly, trial counsel did not err by failing to seek the instruction. Mr. Hawkins has not established that his counsel was ineffective.

Involvement of Others
¶ 33 Mr. Hawkins also complains that the trial court erred in excluding evidence that his in-laws had motive and opportunity to set him up to commit this crime. We believe the trial court inappropriately relied on the "other suspects" authority when it excluded this testimony. However, the error did not harm the defense.
¶ 34 Evidence is relevant if it makes "the existence of any fact that is of consequence to the determination of the action more probable or less probable." ER 401. Relevant evidence is generally admissible at trial, but can be excluded where its value is outweighed by other considerations such as misleading the jury or wasting time. *1232 ER 402; ER 403. Trial court decisions to admit or exclude evidence are entitled to great deference and will be overturned only for manifest abuse of discretion. State v. Luvene, 127 Wash.2d 690, 706-707, 903 P.2d 960 (1995). Discretion is abused where it is exercised on untenable grounds or for untenable reasons. State ex rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971). A court also abuses its discretion when it applies the wrong legal standard. State v. Rafay, 167 Wash.2d 644, 655, 222 P.3d 86 (2009).
¶ 35 The defendant in a criminal case has the constitutional right to present evidence in his defense. State v. Jones, 168 Wash.2d 713, 720, 230 P.3d 576 (2010). The evidence must be relevant; but, if relevant, can only be excluded if there is a strong showing that it will prejudice the jury. Id.
¶ 36 Washington law places limits on the ability of a criminal defendant to blame another person for the crime. When "other suspects" evidence is offered, it must satisfy a specific foundation:
Before such testimony can be received, there must be such proof of connection with the crime, such a train of facts or circumstances as tend clearly to point out someone besides the accused as the guilty party.
State v. Downs, 168 Wash. 664, 667, 13 P.2d 1 (1932); accord, State v. Mak, 105 Wash.2d 692, 716-717, 718 P.2d 407, cert. denied, 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 599 (1986); State v. Russell, 125 Wash.2d 24, 75, 882 P.2d 747 (1994), cert. denied, 514 U.S. 1129, 115 S.Ct. 2004, 131 L.Ed.2d 1005 (1995).
¶ 37 The parties argue this case at the intersection of other suspects evidence and the defendant's right to present his defense. We do not agree this case presents the other suspects scenario. In the classic other suspects case, the defendant blames the specific crime for which he has been charged on someone else. That was not what happened in this case. Here, Mr. Hawkins was caught with the RLF Kubota and charged with possessing (and attempting to possess) that tractor knowing it was stolen. His defense was that he thought he was in possession of his own tractor and that someone had "set him up" or "framed" him by switching tractors. Presenting evidence about others who might have framed him would tend to support his theory of the case. We think such evidence is not subject to the "other suspects" foundation. Instead, the test for relevance appliesdid the evidence tend to prove a fact of consequence to the case? ER 401. Similar to the Downs standard, we think that evidence of a framing would require showing that the specified person(s) had some direct connection with the actions that framed the defendant. In that case, the actor's reason for doing so would be relevant.
¶ 38 Mr. Hawkins did present other evidence that he had been "set up" by someonehis tractors had been switched, the sprayers moved onto his property, and someone alerted law enforcement that the tractor was being moved. He also presented evidence that Len England had discovered and provided photographic evidence about the sprayers being on Sundance Slope property. The defense also presented evidence that deputy Dale England reported the RLF Landini tractor was on the move and assisted, outside of his jurisdiction, an investigation into the tractor. Thus, motive evidence identifying the reasons why these two men might be setting Mr. Hawkins up would be admissible.[2]
¶ 39 The trial court abused its discretion by applying the wrong legal standard to the proffered motive evidence. Rafay, 167 Wash.2d at 655, 222 P.3d 86. The court also excluded the evidence on the basis of ER 401 and 403, questioning its relevance and fearing that it required the jury to speculate. Given the testimony that two members of the England family had involvement with the sprayers and the RLF Landini tractor, evidence of their motive for framing Mr. Hawkins was relevant and did not require the *1233 jury to speculate. Absent a compelling need to exclude the evidence, it should have been admitted. Jones, 168 Wash.2d at 720, 230 P.3d 576. There was no compelling need shown here. It was error to exclude the testimony.
¶ 40 The remaining question is whether the error was harmful or harmless. The standard of harmless error varies with the type of error involved. Error of constitutional magnitude can be harmless if it is proven to be harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In contrast, evidentiary error can be harmless if, within reasonable probability, it did not materially affect the verdict. State v. Zwicker, 105 Wash.2d 228, 243, 713 P.2d 1101 (1986).
¶ 41 This error was evidentiary in nature, but it also was harmless under either standard of review. The excluded testimony was very limited in scopeMrs. Hawkins was going to testify why she no longer did business with her family's packing company. While very debatable, that evidence might provide a motive for the England family and the Hawkins family to be hostile to each other. It does not provide a motive for Robert Morrison to be hostile to the Hawkins family. That point is critical to this case.
¶ 42 The jury acquitted on the two counts that had some connection to a member of the England family. However, the family was never linked to the RLF Kubota tractor. Defense counsel suggested in closing that it was Morrison who put the equipment on the Sundance Slope property. There was no evidence that Morrison did move them, but only speculation that he could have done so. Thus, there was no foundation for even establishing any motive Mr. Morrison may have had to frame Mr. Hawkins. There also was no evidence presented that suggested Morrison had any motive to frame the Hawkins family. Excluding evidence of Hawkins-England hostility did not affect the verdicts involving the RLF Kubota tractor. There was no showing that specific people had set up Mr. Hawkins on those counts, and thus no basis for admitting evidence of motive to do so.
¶ 43 The excluded motive evidence was only admissible on the two counts that resulted in acquittals, so it could not have affected the verdicts on the other counts. Any error in excluding the testimony was harmless under any standard of review.

CONCLUSION
¶ 44 The convictions are affirmed.
WE CONCUR: SWEENEY and BROWN, JJ.
NOTES
[1] The two counts involving the RLF Kubota concerned the retrieval and attempted retrieval of that tractor from Valley Tractor.
[2] Whether the two men were trying to frame Mr. Hawkins or were simply reporting criminal activity was a question for the jury to decide.