# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51572-5-II |
| Respondent, | |
| v. | |
| JAMES JOHN O'HAGAN, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — James John O'Hagan appeals his convictions for possession of a stolen vehicle and possession of stolen property in the first degree. He contends the trial court violated his constitutional right to present a defense by not instructing the jury on the good faith claim of title defense. O'Hagan further alleges the sentencing court erred by imposing a criminal filing fee as a legal financial obligation (LFO).

In his statement of additional grounds for review (SAG), O'Hagan makes several unmeritorious allegations, including malicious prosecution, judicial misconduct, ineffective assistance of appellate counsel, and due process violations. We affirm O'Hagan's convictions but remand to the sentencing court to determine whether the criminal filing fee should be stricken.[1]

---

[1] On February 13, 2019, O'Hagan filed a pro se motion for an "Order Directing State to Submitt [sic] Copy of Brief to Appalant[sic]." Appellant's Mot. (Feb. 13, 2019) at 1. Our records show that the State provided a copy of its response brief to appellate counsel on January 23, 2019. This satisfies RAP 10.1(h). For this reason, we deny the motion. Also on February 13, O'Hagan filed a motion to "Appoint Effective Assistance of Counsel." Appellant's Mot. (Feb. 13, 2019) at 1. O'Hagan claims he "fired" appellate counsel "for ignoring the affirmative defenses I made in defending myself from the criminal charges rouge prosecutor . . . filed against me." Appellant's Mot. (Feb. 13, 2019) at 1. However, on February 19, appellate counsel filed a reply brief, apparently still assigned to O'Hagan's case and not "fired" as alleged. Moreover, both appellate counsel's opening brief and reply brief address O'Hagan's good faith claim of title defense. For these reasons, we also deny O'Hagan's motion to appoint new appellate counsel.

## FACTS

Brian Couch owned a land clearing business. O'Hagan worked for Couch as a job site supervisor and would sometimes repair some of Couch's equipment.

In 2015, Couch was preparing to relocate and needed to store his airboat. The airboat's engine did not work. O'Hagan offered to store the airboat and work on the engine. Couch did not know that O'Hagan knew how to repair airboats. Couch did not ask O'Hagan to work on the airboat and he did not expect O'Hagan to make any repairs. The airboat engine was not repaired.

O'Hagan decided to end his employment. According to Couch, O'Hagan did not have transportation to get home on his last day. Couch let O'Hagan drive Couch's Suburban back to O'Hagan's residence and Couch would retrieve the vehicle later. O'Hagan claims he drove the Suburban home as a favor to Couch.

In late 2015, O'Hagan contacted Couch about money owed to him for back wages. O'Hagan ultimately filed a civil suit against Couch, alleging failure to pay wages.

On three occasions in early 2016, Couch unsuccessfully tried to retrieve the airboat and the Suburban from O'Hagan. Couch contacted law enforcement for assistance.

Pacific County Sheriff's Office Deputy Randall Wiegardt contacted O'Hagan three times in May and June 2016. On one occasion, Wiegardt saw the Suburban behind O'Hagan's residence and the airboat in his detached shop. Wiegardt advised O'Hagan he would face criminal charges if he failed to return the property to Couch. O'Hagan refused to return the property.

In November 2016, the State charged O'Hagan with possession of a stolen vehicle and possession of stolen property in the first degree. The State later added a bail jumping charge after O'Hagan failed to appear for a scheduled court hearing. At the time, O'Hagan was running for Washington State House of Representatives.[2]

As a defense to the two possession charges, O'Hagan argued he had a good faith claim of title to the Suburban and airboat. The trial court initially allowed the defense as to the possession of stolen property charge because O'Hagan claimed that he worked on the airboat and Couch owed him for it. The trial court did not allow the defense as to the possession of a stolen vehicle charge because O'Hagan's claim that Couch owed him for driving the vehicle to Grayland was "too attenuated." Report of Proceedings (RP) (Jan. 29, 2018) at 18.

During trial, O'Hagan represented himself with the assistance of standby counsel. O'Hagan testified that he never intended to keep the property. He was merely holding onto it in good faith until the civil litigation was resolved. He admitted, however, that the civil suit did not include a claim of title to the airboat or Suburban. O'Hagan also testified that he believed the State was biased against him and was maliciously prosecuting him.

At the conclusion of testimony, the parties addressed the jury instructions. O'Hagan proposed the following instruction:

> In any prosecution for theft, it shall be a sufficient defense that:
> (a) The property or service was appropriated openly and avowedly under a claim
> of title made in good faith, even though the claim be untenable[.]

Clerk's Papers (CP) at 55. The trial court reconsidered its ruling that O'Hagan had a good faith claim of title to the airboat and declined to give the proposed instruction. The court concluded

---

[2] He did not win the election.

that, based on *State v. Hawkins*, 157 Wn. App. 739, 238 P.3d 1226 (2010), the good faith claim of title defense did not apply to possession of stolen property cases.

The jury found O'Hagan guilty as charged. The sentencing court ordered 168 hours of community service and imposed LFOs, including a $200 criminal filing fee. In addition, the court entered an order of indigency for appeal purposes. The only mention of O'Hagan's ability to pay was the court's comment that O'Hagan was 63 years old and "almost to the point where he can probably get Medicare or Medicaid." RP (Mar. 23, 2018) at 462. O'Hagan appeals.[3]

## ANALYSIS

### I.    CONSTITUTIONAL RIGHT TO PRESENT DEFENSE

O'Hagan first argues that the trial court violated his constitutional right to present a defense when it denied his request to instruct the jury regarding the good faith claim of title defense. O'Hagan contends the court erroneously concluded the defense did not apply to his possession offenses. We disagree.

Criminal defendants have a constitutional right to present a defense. U.S. CONST. amends. V, VI, XIV; WASH. CONST. art. I, §§ 3, 22; *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). However, "[t]his right is not absolute." *State v. Arredondo*, 188 Wn.2d 244, 265, 394 P.3d 348 (2017). The defendant's right to present a defense is subject to "established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers*, 410 U.S. at 302; *State v. Cayetano-Jaimes*, 190 Wn. App. 286, 296, 359 P.3d 919 (2015).

---

[3] O'Hagan only appeals his possession convictions.

We review a claim of a denial of the right to present a defense novo. *State v. Jones*, 168 Wn.2d 713, 719, 230 P.3d 576 (2010). Similarly, when a trial court refuses to give a requested jury instruction based on a ruling of law, we review the denial de novo. *State v. Brightman*, 155 Wn.2d 506, 519, 122 P.3d 150 (2005).

A good faith claim of title defense is a statutory affirmative defense to the charge of theft. RCW 9A.56.020(2)(a); *City of Seattle v. Shepherd*, 93 Wn.2d 861, 868, 613 P.2d 1158 (1980). The defense negates the element of intent by providing that a defendant cannot be guilty of theft if he took the property openly and avowedly under a claim of title made in good faith. RCW 9A.56.020(2)(a); *State v. Ager*, 128 Wn.2d 85, 95, 904 P.2d 715 (1995).

Here, the State charged O'Hagan with possession of a stolen vehicle and possession of stolen property in the first degree. O'Hagan argues that to convict him of either offense the State had to prove there was a theft; therefore, the good faith claim of title defense applies. (Br. of Appellant at 20) This argument was raised, and rejected, in *Hawkins*, 157 Wn. App. 739, 238 P.3d 1226 (2010).

In *Hawkins*, the State charged Hawkins with multiple counts of possession of stolen orchard equipment. 157 Wn. App. at 742. A jury found him guilty of one count of possession of stolen property and one count of attempted possession of stolen property, relating to a single tractor. *Hawkins*, 157 Wn. App. at 746. On appeal, Hawkins argued that the trial court should have *sua sponte* instructed on the good faith claim of title defense or that counsel erred by not proposing such instruction. The court disagreed because "[b]y its very terms, the statutory defense

5

in RCW 9A.56.020(2) applies to a 'prosecution for theft.' It does not address theft-related crimes such as possession of stolen property." *Hawkins*, 157 Wn. App. at 748.[4]

Similarly, here, the good faith claim of title defense has no application to O'Hagan's possession of a stolen vehicle and possession of stolen property. RCW 9A.56.020(2), by its very terms, applies to a "prosecution for theft." It does not address possession of stolen property crimes. Possession of stolen property is separate from theft. Indeed, O'Hagan's proposed jury instruction even acknowledges that the defense applies to a prosecution of "theft." CP at 55. Accordingly, as a matter of law the trial court did not err in declining to submit a jury instruction that did not relate to O'Hagan's offenses. For this reason there was no instructional error. Because the court did not err in rejecting O'Hagan's instruction, the court did not violate O'Hagan's right to present a defense.[5]

## II.    LFOs

O'Hagan next argues that the imposed criminal filing fee is no longer authorized based on 2018 legislative amendments to statutes relating to LFOs. This legislation prohibits sentencing courts from imposing discretionary LFOs and criminal filing fees on indigent defendants. *State v. Ramirez*, 191 Wn.2d 732, 746, 426 P.3d 714 (2018); RCW 36.18.020(2)(h); LAWS OF 2018, ch.

---

[4] We also note that this defense is available for theft if a defendant attempts to recover specific property that he thought belonged to him. *State v. Hicks*, 102 Wn.2d 182, 184, 683 P.2d 186 (1984). The defense is only available when a defendant attempts take the property that he or she has a good faith claim of title, and not just any property to satisfy a debt. *State v. Ager*, 128 Wn.2d 85, 95-96, 904 P.2d 715 (1995).

[5] The parties also dispute whether the facts support a good faith claim of title instruction, including discussion of whether there was an implied mechanic's lien that gave O'Hagan a claim of title. However, because we conclude that O'Hagan was not entitled to a good faith claim of title defense instruction as a matter of law, we decline to reach the merits of whether the facts support the offering of the instruction. *See State v. Torres*, 198 Wn. App. 864, 882, 397 P.3d 900, *review denied*, 189 Wn.2d 1022 (2017).

269, § 17. However, RCW 36.18.020(2)(h) states that the defendant must be found indigent as defined in RCW 10.101.010(3)(a)-(c). The State argues that the sentencing court found O'Hagan indigent under RCW 10.101.010(3)(d) (based on inability to pay the anticipated cost of counsel).

The court approved an order of indigency for O'Hagan to appeal his case at public expense. There was no mention of his ability to pay other than the court's comment that O'Hagan was 63 years old and "almost to the point where he can probably get Medicare or Medicaid." RP (Mar. 23, 2018) at 462. The record is unclear if the trial court found O'Hagan indigent based on the definitions in RCW 10.101.010(3)(a)-(c). Accordingly, we remand for the trial court to determine whether O'Hagan is indigent under RCW 10.101.010(3)(a)-(c) and therefore whether the criminal filing fee must be stricken.

III.    SAG ISSUES

O'Hagan raises numerous allegations in his SAG. The purpose of a SAG is to discuss those matters related to the "decision under review" that an appellant believes was not adequately addressed by counsel. RAP 10.10(a). Many of O'Hagan's arguments relate to matters outside the decision on appeal; specifically issues relating to the civil ligation between O'Hagan and Couch, allegations of election fraud and judicial misconduct, requests for copies of all Washington judges's oaths of office and surety bonds, and O'Hagan's displeasure with the government and the judicial system as a whole are matters outside the decision on appeal. These issues are not properly before this court. Additionally, we will not consider documents attached to O'Hagan's SAG that are not included in our record. RAP 10.10(c). The SAG issues that are properly before us are addressed below.

A.     Malicious Prosecution

O'Hagan alleges that the State filed the charges against him in an attempt to prevent him from being elected to the Washington State House of Representatives.  Malicious prosecution occurs when the State "maliciously and without probable cause therefor, cause[s] or attempt[s] to cause another to be arrested or proceeded against for any crime of which he or she is innocent." RCW 9.62.010.  "The lack of probable cause must be proved as an essential element of a claim for malicious prosecution."  *State v. Disney*, 199 Wn. App. 422, 429, 398 P.3d 1218 (2017).  A conviction conclusively proves that there was probable cause, unless that conviction was obtained by fraud, perjury, or other corrupt means.  *Hanson v. City of Snohomish*, 121 Wn.2d 552, 560, 852 P.2d 295 (1993).

While O'Hagan testified at trial that the State was maliciously prosecuting him, this testimony is insufficient to show malicious prosecution.  O'Hagan unlawfully possessed Couch's airboat and a Suburban.  O'Hagan refused to return the property after several attempts.  A deputy later observed the items on O'Hagan's property.  A jury convicted O'Hagan.  This evidence demonstrates probable cause to charge O'Hagan with possession of a stolen vehicle and possession of stolen property in the first degree.  Accordingly, O'Hagan's malicious prosecution claim is meritless.

B.     Ineffective Assistance of Appellate Counsel

Next, O'Hagan appears to assert that his appellate counsel rendered ineffective assistance. He alleges appellate counsel conspired with "all of the public officials involved in this communist subversive activity."  SAG at 9.  O'Hagan also alleges that much of appellate counsel's opening brief is false.  These allegations rely on matters outside out record.  Because the record is insufficient to review O'Hagan's claims, we do not further address them.  *See State v. McFarland*,

8

127 Wn.2d 322, 335, 899 P.2d 1251 (1995) ("If a defendant wishes to raise issues on appeal that require evidence or facts not in the existing trial record, the appropriate means of doing so is through a personal restraint petition [PRP].").

### C. Right to Due Process Violated

O'Hagan next alleges his rights to a fair trial and due process were violated "because of the communist arrogance, bias, malice and prejudice involved." SAG at 45. Again, his allegations are outside our record. If he has further evidence, his proper recourse is the filing of a PRP. *McFarland*, 127 Wn.2d at 335.

### D. Incorporation of Prior Habeas Corpus Actions

O'Hagan alleges that he has filed several habeas corpus petitions and asks this court to incorporate the arguments in those petitions into his direct appeal. First, a party on appeal may not incorporate by reference arguments presented in other proceedings. *See In re Guardianship of Lamb*, 173 Wn.2d 173, 183 n.8, 265 P.3d 876 (2011) (party waives issues not fully argued in appeal briefs). Second, the only habeas corpus petition currently pending that involves O'Hagan's convictions is *In re Pers. Restraint of O'Hagan*, no. 52032-0-II. And that matter is stayed pending the mandate of this appeal.

### E. Request for Grand Jury

O'Hagan next asks us to convene a grand jury to investigate the "Nazi Gestapo like" corruption in Washington State's judicial system. SAG at 43. O'Hagan's request is misplaced. We are not a fact-finding court and do not convene grand juries. *See Berger Eng'g Co. v. Hopkins*, 54 Wn.2d 300, 308, 340 P.2d 777 (1959) (appellate courts are "not a fact-finding branch of the judicial system."). Accordingly, there is no relief we can afford for his request.

F.      Request for Oral Argument

Lastly, O'Hagan requests oral argument.  Because this appeal can be decided on the briefs, oral arguments is unnecessary.  *See* RAP 11.4(j).  We, therefore, deny O'Hagan's request for oral argument.

We affirm O'Hagan's convictions but remand to the sentencing court to determine whether the criminal filing fee should be stricken.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

                                    _____
                                            Melnick, J.

We concur:

_____
        Maxa, C.J.

_____
        Glasgow, J.